John Leonard *versus* The Commonwealth, *ex
relatione* Lewis C. Cassidy, Attorney General.

| | |
|---|---|
| 112 | 607 |
| 117 | 656 |
| 112 | 607 |
| 145 | 391 |
| 146 | 542 |

The Act of June 8th, 1881, P. L., 70, entitled an Act to prevent bribery
and fraud at nominating elections, nominating conventions, returning
boards, county or executive committees, and at the election of delegates
to nominating conventions in the several counties of the commonwealth,
is a lawful exercise of legislative power, and is an election law within
the meaning of section 9, article VIII. of the Constitution.

| | |
|---|---|
| 112 | 607 |
| 19 SC | 197 |
| 112 | 607 |
| 21 SC | 227 |

April 22d, 1886. Before MERCUR, C. J., GORDON, PAX-
SON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Schuylkill county :*
Of January Term, 1886, No. 167.

This was a writ of *quo warranto* at the relation of Lewis
C. Cassidy, Attorney General of the Commonwealth of Penn-
sylvania, against John Leonard, commanding him to show by
what authority he exercised the office of county commissioner
in and for the county of Schuylkill.

The cause was tried by PERSHING, P. J., GREEN and BECH-
TEL, A. L., JJ., and a jury. The pleadings were as follows:

On July 11th, 1885, the Attorney General filed the fol-
lowing suggestion verified by the affidavit of Charles Hause:

*Schuylkill County, ss. :*

Be it remembered, that Lewis C. Cassidy, Attorney General
of the Commonwealth of Pennsylvania, who sues for the com-
monwealth in this behalf, comes here into court, and gives the
court to understand and be informed that John Leonard was a
candidate for the office of county commissioner for the county
of Schuylkill, in the year eighteen hundred and eighty-four,
when, under the laws of this commonwealth, it was and be-
came the duty of the electors of said county to elect three

county commissioners for the said county, at the general election to be held in and for said county on the fourth day of November, A. D. one thousand eight hundred and eighty-four, to fill the said office of county commissioner for said county for the term of three years, commencing the first Monday of January, A. D. 1885. That the said John Leonard was returned as elected at the aforesaid general election held in and for said county, of Schuylkill, on the fourth day of November, A. D. one thousand eight hundred and eighty-four, to the office of county commissioner for said county of Schuylkill, and that since the fifth day of January last he has exercised and still does exercise the franchises, rights, privileges, functions and office, and enjoys the emoluments of the office of county commissioner of the county of Schuylkill. That while a candidate for said office he was wilfully and corruptly guilty of bribery, fraud and the wilful violation of the election laws of the commonwealth, in that he at divers times and places during the year of eighteen hundred and eighty-four, and while he was a candidate for the nomination for the office of county commissioner in said county by the republican nominating convention, in violation of the election laws of this commonwealth, and to divers electors in said county did offer and promise money, situations, appointments and offices and other valuable things, and knowingly allowed the same to be done by others for him, for the purpose of securing the assistance of said persons for the election of delegates in his behalf to said convention, and for the purpose of procuring his nomination by said republican convention for the said office of county commissioner. And in that he at divers other times and places during the year eighteen hundred and eighty-four, and while he was a candidate for the office of county commissioner in said county, in violation of the election laws of the commonwealth, and to divers electors in said county, did offer and promise money, appointments, situations and offices and other valuable things which he, if elected to said office of county commissioner, could and would appoint to and give to said electors, and did knowingly allow the same to be done by others for him, for the purpose of securing his election to said office of county commissioner of said county. And in that to one, Charles Hause, a qualified elector of said county, he (the said John Leonard), during the year 1884, and while he was a candidate for the nomination and election for county commissioner in said county as aforesaid, did offer, promise and agree to give to him (the said Charles Hause), the appointment of watchman at the court house in said county if he (the said Charles Hause), would support him (the said John Leonard), and aid him in securing the nomination and election as such

commissioner ; and that the said Charles Hause, on the faith
of such offer, promise and agreement, traveled through said
county and labored hard and successfully in securing the nomi-
nation and election of said John Leonard as such commis-
sioner.  And in that one, David Evans, a qualified elector of
said county, he (the said John Leonard), during the year
1884, and while he was a candidate for the nomination and
election for county commissioner in said county as aforesaid,
did offer, promise and agree to give to him the . appointment
of watchman of the jail of said county, if he (the said David
Evans), would support him (the said John Leonard), and aid
in securing his nomination and election as such commissioner ;
and that the said David Evans, on the faith of such offer,
promise and agreement, did exert himself among his friends,
and did aid in securing the nomination and election of the
said John Leonard as such commissioner.  And in that to one
Nicholas Madara, a qualified elector of said county, he (the
said John Leonard), during the year 1884, and while he was
a candidate for the nomination and election for county com-
missioner in said county as aforesaid, did offer, promise and
agree to give to him the appointment of collector of county
taxes for Norwegian and East Norwegian townships in said
county, if he (the said Nicholas Madara), would come into
said convention as a delegate and would vote for the said John
Leonard for commissioner, and aid in securing his nomina-
tion ; and that the said Nicholas Madara, on the faith of such
offer, promise and agreement by said John Leonard to give to
him (Nicholas Madara), said tax duplicate, the said Nicholas
Madara ran as a delegate to said convention and secured his
election as such, and came into said convention as a delegate
and did then and there not only himself vote for the said John
Leonard for commissioner, but also exerted himself among his
friends to secure the nomination of said John Leonard.  And
in that to one Edward Henry, a qualified elector of said county,
he (the said John Leonard), during the year 1884, and while
he was a candidate for the nomination and election for county
commissioner in said county as aforesaid, did offer, promise
and agree to give to him the appointment of collector of
county taxes for said township of Porter in said county, if he
(the said Edward Henry), would come to said convention as
a delegate from said Porter township and support him (said
Leonard), for commissioner ; and that the said Edward Henry,
on the faith of such offer, promise and agreement, did secure
his election as a delegate to said convention, and did in said
convention support and vote for the said John Leonard and
aid in securing his nomination.  And in that to one George
W. Heffner, Esq., a qualified elector of said county, who had

[Leonard *v.* Commonwealth.]

been a rival candidate before said Republican nominating convention for the nomination for commissioner, but failed in securing such nomination, he (the said John Leonard), during the year 1884, and while he was a candidate for the nomination and election for county commissioner in said county as aforesaid, did, after said convention and before the general election, offer and promise to and agree with the said George W. Heffner to give to him the appointment of warden of the jail of said county, if he (the said George W. Heffner), would support him (the said John Leonard), and aid in securing his election as such commissioner. And did at the same time also further offer, promise to and agree with the said George W. Heffner that, as warden of the jail, he (Heffner), could leave his (Heffner's), farm (the said Heffner being the owner and occupant of a farm in North Manheim township), in charge of his (Heffner's), son, and that said son could bring the produce of said farm to the jail, and thus secure a good steady market and customer for the produce of his farm at the best market prices; and the said George W. Heffner, on the faith of such offer, promise and agreement, did support the said John Leonard and aid in securing his election as such commissioner. And in that, to divers other persons, qualified electors of said county, the names of whom are to the relator unknown, he (the said John Leonard), at divers other times, while he was a candidate for the office of county commissioner as aforesaid, did offer and promise to give money, appointments, situations and offices and other valuable things, which said appointments, situations and offices and other valuable things were in the power and gift of the commissioners of said county, and did knowingly allow and authorize the same to be done by others for the purpose of securing his said nomination and election to the office of county commissioner of the said county of Schuylkill. And in that he (the said John Leonard), at divers other times, while he was a candidate for said office of county commissioner as aforesaid, furnished money, rewards and other valuable things to Charles Hause, Edward Henry, Nicholas Madara, and to divers other persons, qualified electors of said county whose names are unknown, to influence their votes respectively, and also to be used to influence the votes of others in favor of him (the said John Leonard), at said election for the said office of commissioner as aforesaid, and in carrying the said election for him, for other purposes than printing and traveling expenses and the dissemination of information to the public, or for political meetings, demonstrations and conventions, or for any necessary and proper expense expressly authorized by law, but for corrupt and illegal purposes in procuring his election.

And the said John Leonard, while a candidate for said office, made other promises and offered to give to the electors of the said county of Schuylkill money, rewards and other valuable considerations for votes at his election ; and did, wilfully and corruptly, use and pay money to a large amount, to wit : to the amount of five hundred dollars, to divers of the electors, whose names are unknown, of said county, for the purpose of securing and controlling the votes of said electors at the election at which he was a candidate as aforesaid ; and the said John Leonard having taken the oath required by the constitution of the State of Pennsylvania, after he had been declared elected to the office of said commissioner, did then and there commit and was guilty of wilful and corrupt perjury, having committed and been guilty of the acts and offences first above alleged and charged, which in said oath, taken as aforesaid, he denied, whereby the said John Leonard has become and is disqualified from holding said office of commissioner of the county of Schuylkill, and since the first Monday of January, 1885, he has usurped and does usurp on the commonwealth therein, to the great damage and prejudice of the constitution and laws thereof.

Whereupon the said relator for the said commonwealth does make suggestion and complaint of the premises, and prays due process of law against the said John Leonard in this behalf to be made, to answer to the said commonwealth, by what warrant he claims to have, use and enjoy the franchises, rights and privileges aforesaid.

On filing this suggestion a writ of *quo warranto* was directed to issue and an order made that the respondent answer, plead or demur to the allegations and charges on or before August 1st, 1885.

On August 2d the respondent filed the following answer, verified by his affidavit :

This defendant, now and at all times hereafter saving and reserving unto himself all benefit and advantage of exception which can or may be had or taken to the many errors, uncertainties and other imperfections in the suggestion for the said writ of *quo warranto* contained, for answer thereunto, or unto so much and such parts thereof as this defendant is advised is or are material or necessary for him to make answer, this defendant answering saith :

That it is true that this defendant was a candidate for the office of county commissioner for the county of Schuylkill in 1884, and was duly and legally elected a county commissioner for the said county of Schuylkill on November 4th, 1884, for the term of three years, and had a majority of 1676 votes over

[Leonard *v.* Commonwealth.]

his defeated competitor; and that he holds, exercises and enjoys said office and its franchises.

That it is not true that this defendant was wilfully and corruptedly guilty of bribery, fraud, and the wilful violation of the election laws of the commonwealth while he was a candidate for the nomination for county commissioner in the year 1884.

That it is not true that this defendant offered and promised money, appointments, situations and offices and other valuable things to divers electors, or to any elector in 1884 while he was a candidate for said office for the purpose of securing his election.

That it is not true that this defendant offered, promised or agreed to give to Charles Hause the appointment of watchman at the court house if said Hause would support him, the said Leonard.

That it is not true that this defendant offered, promised or agreed to give to David Evans the appointment of watchman of the jail, if said Evans would support him, the said Leonard.

That it is not true that this defendant offered, promised or agreed to give to Nicholas Madara the appointment of collector of county taxes for Norwegian and East Norwegian townships, if said Madara would come as a delegate to the nominating convention and support said Leonard.

That it is not true that this defendant offered, promised or agreed to give to Edward Henry the appointment of collector of county taxes for Porter township, if said Henry would come as a delegate to the nominating convention and support him, the said Leonard.

That it is not true that this defendant offered, promised or agreed to give to George W. Heffner the appointment of warden of the jail if said Heffner would support said Leonard or aid in securing the election of said Leonard.

That it is not true that this defendant offered, promised or agreed that said George W. Heffner could leave his farm in charge of his (Heffner's) son, and, as warden of the jail, could purchase from his (Heffner's) son, the farm produce at the best market price as set forth in said suggestion.

That it is not true that this defendant furnished money, rewards or other valuable things to Charles Hause, Edward Henry, Nicholas Madara, or any other qualified elector to influence their votes or to be used to influence the votes of others in favor of him, the said Leonard at said election and in carrying the said election for him, the said Leonard, for other purposes than printing and traveling expenses, and the dissemination of information to the public, and for political

[Leonard v. Commonwealth.]

meetings, demonstrations and conventions, and for such other necessary and proper expenses expressly authorized by law, and not for any corrupt or illegal purposes in procuring his election.

That this defendant denies that while a candidate for the office of county commissioner that he did offer, promise or agree to give any money, appointments, situations or offices or other valuable things to divers or to any qualified elector of said county or that he did knowingly allow or authorize the same to be done by others for the purpose of securing his nomination or election to the office of county commissioner of the said county of Schuylkill.

And this defendant respectfully submits to this honorable court that he should not be called on to answer or defend against all such vague, uncertain and indefinite allegations, which charge him with bribery, fraud, and a violation of the election law, without specifying the persons with whom such offences are alleged to have been committed.

And this defendant therefore prays the court to quash all said specifications in said suggestion mentioned which relate to persons not named, unless the commonwealth will furnish him with a bill of particulars naming the persons and specifying the time upon which it relies to sustain the charges set forth in those specifications.

That it is not true that this defendant was guilty of, or committed wilful and corrupt perjury in taking the oath required by the constitution of Pennsylvania.

And this defendant denies all and all manner of bribery, fraud or wilful violations of the election laws of this commonwealth, wherewith he is by the said writ charged, and any other matter, cause or thing in the said suggestion contained material or necessary for this defendant to make answer unto and not herein and hereby well and sufficiently answered, confessed, traversed, avoided or denied, is not true to the knowledge of this defendant.

All which matters and things this defendant is ready and willing to aver, maintain and prove as this honorable court shall direct.

Wherefore this defendant prays judgment, and that the office of county commissioner may be adjudged and allowed to him, and humbly prays to be dismissed with his reasonable costs and charges in this behalf most wrongfully sustained.

On August 22d, 1885, the Commonwealth filed the following replication :

And the said relator, who prosecutes for the Commonwealth in this behalf, having heard the plea of the said John Leonard in manner and form aforesaid, above pleaded in bar to the said

suggestion for the said Commonwealth, says that by reason of anything in that plea alleged, the said Commonwealth ought not to be barred from having the said suggestion against the defendant, because protesting that the said plea and the matter therein contained are not sufficient in law to bar the said Commonwealth from having the aforesaid suggestion against the said defendant, to which plea in manner and form above pleaded, the said relator is under no necessity, nor in any way obliged by the law of the land to answer; for replication nevertheless, the said relator says, that the said defendant was not on the said fourth day of November, in said plea mentioned, or at any other time, according to the provision of the said Act of Assembly, duly elected, constituted and appointed county commissioner of the said county of Schuylkill, and that the said John Leonard did not become lawfully authorized and entitled to take upon him to exercise and enjoy said office as county commissioner of the said county of Schuylkill, and the franchises, rights and privileges thereunto belonging and appertaining within the said county. And of this the said relator puts himself upon the country, etc.

On August 27th the relator filed a rejoinder.

The court ordered that the cause be set down for trial for the week beginning September 28th, 1885.

The relator presented, *inter alia*, the following point:

9. That the Act of June 8th, 1881, P. L. 70, entitled "An Act to prevent bribery and fraud at nominating elections, nominating conventions, returning boards, county or executive committees, and at the election of delegates to nominating conventions in the several counties of this Commonwealth," is not one of the election laws of this Commonwealth, and the violation of its provisions is not a violation of any of the election laws with which this defendant now stands charged.

Answer by Pershing, P. J. We answer that in the negative. By this the question is very squarely raised. The Legislature felt bound to take action to regulate nominating conventions and prevent fraud there, and you can readily see if a candidate for nomination should resort to bribery, fraud and corruption to get the nomination, and then between the time of the nomination and election conduct himself properly, and yet escape any liability for the corruption in getting the nomination, then it would not correct the evil that the constitution and the Legislature intended should be corrected in order to purify our elections. The primary elections and nominating conventions have become important elements in the politics of this state and the country, and this Act of 1881, which is referred to here, was for the purpose of con-

.trolling and regulating those primary elections, the delegate elections as they are called. It provides " that hereafter if a candidate for any office within this Commonwealth shall, directly or indirectly, give, offer or promise to give, or procure any other person to give, offer or promise to give, to any elector any gift or reward in money, goods or other valuable thing, or any security for the payment or the delivery of money, goods or other valuable thing, or any office, emolument or employment on condition, express or implied, that the said elector shall cast, give, retain or withhold his vote, or use his influence at a nominating election or delegate election, or cast, give or substitute another to cast or give, his vote or use his influence at a nominating convention for or against the nomination of any particular candidate for nomination (and so on), is subject to a penalty, and may be sentenced to pay a fine not exceeding $300, and be imprisoned for a period not exceeding three months."

It was intended to purify the delegate elections, prevent fraudulent means being employed to send delegates to nominate candidates. It was a great evil, one which the Legislature felt bound to interfere with. It very often happened that the party who received the most votes was not returned, and men who never were elected were returned as delegates to a county convention, and so there is a punishment provided here for any party who accepts any bribe of that kind. This was found still not to be sufficient, and there was further legislation on the subject which has not been called to your attention, which indicates to my mind very clearly that this must be regarded as a part of the election law of the state. It goes to the very foundation of our political system in making nominations and electing men to office. I repeat, that if a man should by corrupt influence, by promise of reward, or in any other way obtain a nomination over honest men who would not resort to such methods, and then, by simply conducting himself properly after that, hold the office without subjecting himself to punishment for his fraudulent incipiency of the canvass, there would be a great defect in the law. A subsequent Act passed by the same legislature provides for the duties of judges, inspectors and clerks and other officers of these delegate elections, meetings or caucuses for the purpose of nominating candidates for office of state, city or county. They are required each one to take an oath to properly, impartially and faithfully perform their duties. The oath is to be administered by some judicial officer, and it is to be a matter of substance, and not a matter of form. And then if any judge, inspector or clerk shall presume to act at a delegate election without taking that oath, he is liable to

a penalty of $200. "If any judge, inspector or clerk or any other officer at such delegate election, shall wilfully disregard or violate the conditions or rules of his party, he is liable to a like penalty. If they shall reject any legal vote or receive an illegal vote, they are subject to the same penalty; shall knowingly receive a vote of a man who is not entitled to vote, or reject the vote of a man who is entitled, they are subject to this penalty. If any judge, inspector, clerk or other officers of a primary election as aforesaid, shall be guilty of any wilful fraud in the discharge of his duties, by destroying or defacing ballots, adding ballots to the poll, other than those lawfully voted, by stuffing the ballot box"—very familiar language in Pennsylvania,—"by false counting, by making false returns, or by any act or thing whatsoever, the person so offending shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not exceeding $500, or imprisoned not exceeding one year, or both, or either at the discretion of the court. (Act of June 29th, 1881, P. L. 128).

These two Acts which I have read to you are to regulate delegate elections. I think they must be regarded as part of the election laws of the state, and a very important part of them. (Tenth assignment of error.)

Verdict for the plaintiff and judgment thereon. And it is further ordered and directed that the defendant, John Leonard, be, and he is hereby ousted from the office of county commissioner, and that he be enjoined from the exercise and enjoyment of the rights, privileges and franchises of said offce, and that the Commonwealth recover her costs from said defendant. Same day injunction issued to enforce the same.

The respondent, John Leonard, thereupon took this writ, assigning for error, *inter alia*, the answer of the court to his ninth point and the entering of judgment of ouster against him.

*W. J. Whitehouse, F. H. Walker* and *James B. Reilly* (*M. M. L'Velle* with them), for plaintiff in error.—The plaintiff's case turns entirely upon the Acts of June 8th and 28th, 1881, and the rulings of the court below, and the arguments of counsel throughout the trial were mainly based upon the applicability of these statutes to the case at issue, which virtually proceeded as though the defendant was on trial under an indictment for violation of the provisions of said Act, and that such violation, if proven, would be such a violation of "the election laws" as constitutionally disqualified the defendant from holding office, the learned court below holding in the answer to defendant's ninth point that "these two Acts which I have read to you are to regulate *delegate* elections. I think they must be regarded as part of the election laws of

[Leonard v. Commonwealth.]

the state, and a very important part of them." Now this was the vital, in fact, the only question in the case, and was so regarded, as appears from the only point submitted by the plaintiff, as well as from the charge of the court, where it is twice stated as follows: "The defendant is charged with the violation of the election law, has he (the defendant) wilfully and corruptly violated any election law of this Common-wealth?"

Section 9, of article 8, of the Constitution, provides that "any person who shall, while a candidate for office, be guilty of bribery, fraud, or wilful violation of any election law, shall be forever disqualified from holding an office," &c., and it was by virtue of this section that the writ in this case issued, and we submit that it was necessary to establish by competent evidence either one of the three causes specified therein, viz.: either bribery, fraud, or the wilful violation of an election law, the latter being the only question in issue in this case, as is above demonstrated. The question then comes up, "what is an election law," in the meaning of the constitution?

We answer that it is one regulating or relating to general election by the citizens of the Commonwealth, held pursuant to or according to law, and we submit that the Acts of 1881, referred to are not such: First, because they do not relate to any such general election, and second, because they are un-constitutional. The first proposition conclusively appears, not alone from the title, but the body of the Acts themselves. See Act of 8th June, (1881, P. L. p. 70, Act of June 29th, p. 128.) But as this court has very recently (since the trial of the case at bar), decided this very proposition, it is useless to multiply words or prolong this argument. Commonwealth v. Wells, 16 W. N. C., 163.

Admitting for the sake of the argument that the said stat-utes are valid and binding, it might be that a person could be amenable to the penalties therein imposed and yet not be dis-qualified from holding office under the provisions of the Con-stitution. Unless a person *procured* his nomination or elec-tion by bribery, fraud or the wilful violation of an election law, he would not be disqualified from holding office even though he might be guilty of acts that would subject him to other penalties of the law. These statutes were read and commented on at length by the learned Judge who charged the jury, as election laws of the Commonwealth, applicable to the case in hand, and the violation of which in any manner or to any ex-tent worked a disqualification to hold office and justified a ver-dict against the defendant.

Nowhere in the Constitution is there an allusion to any other than a "general" election by all the citizens of the Com-

monwealth, and every.word and line upon the subject clearly
and plainly refers only to such elections, as instance Art. 8,
"All elections by the citizens shall be by ballot" . . . . .
Sec. 4; "The general election shall be held" . . . . . Sec. 2,
Id.; "All laws regulating the holding of elections by the citi-
zens " . . . . . Sec. 7, Id.; "Elections shall be free and equal
and no power, civil or military, shall at any time interfere to
prevent the free exercise of the right of suffrage." Sec. 5,
Art. 1, Declaration of Rights, and so on throughout the Con-
stitution, the one paramount subject is the "general election."
Hence these Acts of· 1881, plainly indicating that they do
not and were not intended to relate to "general elections,"
but apply to another and entirely different subject or kind of
elections ; it is difficult indeed to see how they can be held
to be "election laws" within the meaning of the constitution.

These Acts are unconstitutional again. As above shown,
the only "election " contemplated by and legislated for in the
Constitution is the "general elections " to be held by the citi-
zens. Such a thing as a " primary " election, so called, or
any other, is manifestly unknown to the Constitution and
clearly outside of its meaning. What power then ·has and
whence is it that the General Assembly may enact laws fixing
the holding of and providing for what it is pleased to term
"primary elections." Certainly no such election was known
to the law prior to these Acts. When are they to be held?
By whom conducted?· How regulated? . Who entitled to
vote thereat? Legislation is silent upon all these questions.
These Acts under discussion are in themselves without life.
Unless political parties adopt rules and laws for themselves
the Acts have no force or application. Hence there is a dele-
gation of power to legislate given to political parties,
which is a fatal objection to the constitutionality of
these laws: Lock's Appeal, 22 P. F. S., 491, — their
only strength and efficacy. We need not remind the court
that these are *penal* statutes and therefore to be strictly con-
strued, and to sustain such legislation, would, it seems to us,
stretch the arm of the criminal law to an unwarranted extent
over the citizen, in derogation of the constitutional right of
citizens to assemble together for their common good, for what
is convention or primary meeting but such an assemblage.
Thus we have the anomaly presented in this legislation, that
whilst the Legislature undertakes to fix a certain penalty, yet
it attaches and can be enforced only when the cause for it is
legislated into existence by some unincorporated, unknown
and irresponsible body, acting without authority of and not re-
sponsible under any law. Surely such legislation, so danger-

[Leonard v. Commonwealth.]

ous in its tendencies, cannot be sustained as within the province or power of the General Assembly.

*Lewis C. Cassidy*, Attorney General, and *D. C. Henning* (*James Ryon* and *John W. Ryon* with them), for the Commonwealth, the defendant in error.

1. The Legislature had power to enact the Act of June 8th, 1881, P. L., 70.

2. It is an election law within the meaning of the 9th Section of Art. VIII. of the Constitution.

It is claimed by the plaintiff in error that this is not an election law, because it refers merely to the primary elections and conventions of political parties, and not directly to the general election; we contend, however, that is an election law, and that it is a part of the entire grand machinery by and through which the will of the people is made known; in its very terms it links or connects itself with the general election laws. "So as to procure such person to be voted for at *any* election to take place." . . . . . When it is considered that it is a remedial statute enacted to supply a defect in the old law, stating the mischief and naming the remedy, it is hard for us to see how it should be seriously contended that this is not an election law, a part of the whole election system. But be this as it may, we do not consider this a serious contention in this case.

The title of the Act is "An Act to prevent bribery and fraud at nominating elections," etc. The title of an Act is part of the Act itself, but even this precaution is not necessary, the lawyer who reads the section well knows by its terms alone that it is a definition of the crime of bribery. If, therefore, a violation of the first section of the said Act be bribery, then what need is there that the Act should be called an election law, when the Constitution provides that the candidate who shall be guilty of *bribery*, shall be forever *disqualified* from holding office, etc.? Surely the Legislature has the power to define bribery, and to legislate upon the subject, whether it concerns elections or other interests.

The evidence of such promises of office as are provided against by this Act is so powerful and overwhelming that it is not even sought to be denied by the plaintiff, even by his own testimony, the testimony of his witnesses, or in the argument made by his counsel.

Mr. Justice PAXSON delivered the opinion of the court May 17th, 1886.

This was a writ of *quo warranto* issued at the instance of the Attorney General by which John Leonard, defendant be-

low, was required to show by what authority he held the office of commissioner of Schuylkill county. It was conceded that the respondent was a candidate for said office at the general election in 1884; that he was returned as elected by a large majority; that he received his certificate of election, and in the time and manner designated by law took upon himself the duties of said office.

In the suggestion filed the Commonwealth charges that the defendant, whilst a candidate for said office, was guilty of bribery, fraud, and the wilful violation of the election laws, with several averments setting forth times, places and persons, when and with whom said offences were committed.

The defendant in his answer denies all the allegations of fraud, &c., contained in the suggestion, and after a replication by the Attorney General, the case was tried before a jury, with the result of a verdict in favor of the Commonwealth; whereupon the court below entered judgment upon the verdict and ousted the defendant from the said office. It was to correct alleged errors in the trial of the cause that this writ of error was taken.

The ninth assignment [tenth assignment, ninth point] raised a question which underlies the whole cause. By the defendant's ninth point the court was asked to instruct the jury: "That the Act of June 8th, 1881, P. L. 70, entitled 'An Act to prevent bribery and fraud at nominating elections, nominating conventions, returning boards, county or executive committees, and at the election of delegates to nominating conventions in the several counties of this Commonwealth,' is not one of the election laws of this Commonwealth, and the violation of its provisions is not a violation of any of the election laws with which this defendant now stands charged."

The learned judge declined to affirm this point.

The real question is whether the Act of 1881, above referred to, is an election law within the intent of section 9 of Article VIII. of the Constitution, which declares that: "Any person who shall, while a candidate for office, be guilty of bribery, fraud, or wilful violation of any election law, shall be forever disqualified from holding any office of trust or profit in this Commonwealth; and any person convicted of wilful violation of the election laws shall, in addition to any penalties provided by law, be deprived of the right of suffrage absolutely for a term of four years."

The Constitution provides for the future as well as for the present. Hence when it speaks of a violation of any election law, it does not mean merely such election laws as were in force when it was adopted. The opposite view would be extremely narrow, and with a change in the election laws this

valuable clause in the organic law would drop out. It means any election law then in existence or thereafter to be passed by the legislature, which that body had a right to pass. I do not understand this view to be seriously controverted; the objection to the Act of 1881 is that it relates only to primary elections, nominating conventions, and the like, and not to the general election at which candidates previously nominated are voted for and elected to office; that laws regulating primary elections are not such election laws as are contemplated by the article of the Constitution above quoted.

· This renders necessary an examination of the Act of June 8th, 1881. The first section provides: "That hereafter, if a candidate for any office within this Commonwealth, shall, directly or indirectly, give, offer or promise to give or procure any other person to give, offer, or promise to give to any elector any gift or reward in money, goods or other valuable things, or any security for the payment or the delivery of money, goods, or other valuable things, or any office, emolument or employment, on condition, expressed or implied, that such elector shall cast, give, retain or withhold his vote or use his influence at a nominating election or delegate election, or cast, give or substitute another to cast or give his vote or use his influence at a nominating convention, for or against the nomination of any particular candidate for nomination, so as to procure such person to be voted for at any election to take place, the person so hiring, procuring, influencing, abetting, endeavoring or offering, either directly or indirectly through others, their aiders or abettors, to procure the person to be voted for by such electors, shall be guilty of a misdemeanor, and, on conviction, shall be sentenced to pay a fine not exceeding three hundred dollars, and be imprisoned for a period not exceeding three months."

The second section imposes a like penalty upon any elector who shall accept a bribe or reward of any kind for giving or withholding his vote for the nomination of a person for office.

. The third section imposes the same penalty for an offer to sell a vote at such election or convention.

The fourth section imposes a penalty upon "repeating," as it is called, at such elections, and for the voting thereat by persons not duly qualified to vote at the general election.

The fifth section prescribes and punishes the offence of bribing delegates to nominating conventions.

The sixth and last section punishes the bribery of executive committees or returning boards charged with the duties of counting the votes cast at a primary election, etc.

This brief synopsis of the Act shows it to be, what its title

[Leonard *v.* Commonwealth.]

indicates, an Act to prevent frauds at nominating conventions and primary elections.

Just here we are met with the allegation that the Act is unconstitutional. If this point is will taken we need go no further, for the plain reason that if it is unconstitutional it is no Act at all, and hence is not an election law within the meaning of section VIII. of the Constitution.

The argument has failed to satisfy us that the Act in question is objectionable upon constitutional grounds. Indeed, the force of it was spent upon an Act which is not before us, and with which, at present, we have no concern, viz.: the Act of 29th June, 1881, entitled "An Act to regulate the holding of, and to prevent frauds in, the primary elections of the several political parties in the Commonwealth of Pennsylvania."

The proposition that the Legislature may not prohibit and punish frauds at primary elections and nominating conventions is certainly a novel one. The argument that it is not valid because not expressly authorized by the Constitution is unsound. The converse of the proposition is true; that is to say, the Legislature may pass such laws unless prohibited from doing so by the Constitution. If we were considering the Federal Constitution, there would be some force in this argument, for the National Government is one of limited powers, and what is not found in the Constitution does not exist. At present, however, we are discussing the Constitution of a state, the powers of whose legislature are supreme, excepting in so far as they are restricted by such instrument, or infringe upon powers granted to the National Government. The Act in question is a perfect law so far as its validity depends upon mere form. It is complete within itself. It defines and punishes offences of the gravest character, the existence of which has been known to every intelligent person in the state for many years, and which more than anything else has undermined and weakened our whole system of government. To say that the Legislature may not lay its hand upon a public evil of such vast proportions is to say that our government is too weak to preserve its own life. There is not a line in the Constitution which, in express terms or by any reasonable implication, forbids this legislation.

Regarding the Act of 1881, therefore, as a lawful exercise of legislative power, is said Act an "election law" within the meaning of the Constitution?

Before I proceed further with the discussion of this grave question I will notice the case of Com. *v.* Wells, decided by this court in October last, and reported in W. N. C., vol. 17, p. 164. This case was cited as being conclusive against the contention of the Commonwealth in the case in hand.

[Leonard v. Commonwealth.]

In Com. v. Wells the point was whether a wager upon the result of a primary election was within the meaning of the Acts of March 24th, 1817, Pa. L., 204, and July 2d, 1839, Id., 544, prohibiting wagers or bets upon the result of elections. The preamble and first section of the Act of March 24th, 1817, are as follows: "Whereas, the practice of laying wagers or bets on the event of any elections, or the success of candidates for public offices, has a great tendency to promote immorality and corruption; therefore, be it enacted, etc., that wagering or betting on the event of an election, held under the Constitution or Laws of the United States, or the Constitution and Laws of this Commonwealth, are hereby prohibited, and all contracts or promises founded thereon are declared to be entirely null and void." The penal provisions of this Act were repealed and supplied by the Act of July 2d, 1839, the particulars of which are not important for the purposes of this case.

It was held by this court that the Acts in question relate only to the election of public officers at a general election. It was said by our brother, TRUNKEY, in delivering the opinion of the court: "These provisions are part of enactments which relate to the election of public officers, and have never been understood otherwise. The Act of 1817 expressly refers to betting on the success of candidates for public offices, and the penal provisions against betting on the result of elections, enacted in 1839, are embodied in an Act which relates exclusively to elections for public officers. The subject respecting which betting is prohibited is unmistakable, and the word 'election' cannot be justly construed to apply to other subjects. 'We are to look at the words in the first instance, and when they are plain we are to decide on them. If they be doubtful, we have then to have recourse to the subject matter.' The meaning of the words 'any election within this Commonwealth,' when read with the context, is plain; and when considered with the subject matter there is no footing to conjure a doubt whether they may refer to the election of officers for a private corporation, or of a meeting of citizens. But if taken by themselves they apply to all elections; and if limited only by the words 'any election held under the Constitution or Laws of this Commonwealth,' they may apply to the election of the officers of an insurance company or bank."

The opinion then goes on to demonstrate that a primary election of the kind referred to in the Act of 1881 is as much without the purview of the Act of 1839 as is the election of bank or other corporate officers. All this is very plain. When the Acts referred to prohibit and punish the betting on elections, they manifestly mean elections when some one is elected

to a public office ; not to elections when delegates are to be chosen to nominating conventions. We re-affirm this ruling in all its fulness. But does it apply to the case in hand?

The clause of the Constitution referred to must receive a liberal construction. It is to be interpreted so as to carry out the great principles of government, not to defeat them. It is not to receive a technical construction like a common law instrument or statute : Com. *v.* Clark, 7 W. & S., 127 ; Morrison *v.* Bachert, 17 W. N. C., 353. The object aimed at in the constitutional provision was the purification of our elections. The Act of 1881 is in the direct line of this object. It recognizes the fact that many of the frauds which affect elections, and sometimes thwart the will of the people, are perpetrated in what may be termed the preliminary stages of an election ; in those proceedings by means of which candidates are selected for the people to vote for at the general election. We have already said that it is competent for the law-making power by appropriate legislation to repress and punish such frauds.

It remains to notice the precise language of the 9th section of article VIII.: " Any person who shall, while a candidate for office, be guilty of bribery, fraud, or wilful violation of any election law," &c.

Was the defendant a candidate for office at the time the alleged violation of law occurred? It is not denied that he was nominated and elected, and was therefore unquestionably a candidate for office subsequent to his nomination by the convention. I am now considering the question whether he was a candidate prior to his nomination, and at a time when most of the alleged corrupt offences occurred.

The word " candidate " in the Constitution is to be understood in its ordinary popular meaning ; as the people understood it, whose votes at the polls gave that instrument the force and effect of organic law. Webster defines the word to mean : " One who seeks or aspires to some office or privilege, or who offers himself for the same." This is the popular meaning of the word " candidate ; " it is doubtless the meaning which the members of the constitutional convention attached to it, and the sense in which the people regarded it when they came to vote. We therefore say, in every day life, that a man is a candidate for an office when he is seeking such office. It is begging the question to say that he is only a candidate after nomination, for many persons have been elected to office who were never nominated at all.

We hold therefore that the defendant was a candidate for office within the meaning of the Constitution as well as the Act of 1881. If, while such candidate, he was guilty of either

[Leonard v. Commonwealth.]

bribery, fraud, or the wilful violation of any election law, he comes directly within the terms of the constitutional provision. The matters of bribery and fraud may be passed over in this discussion, which relates more particularly to the last of the offences named, viz.: "the wilful violation of an election law."

What is an election law? Here again we must bring to our aid the common and popular use of words. Our laws are intended for the people, who are presumed to read and understand them. They are not like the edicts of the Roman Emperor Caligula, which, Dio Cassius says, were written in very small characters and hung up so high that the people could not read them. When laws are made by a popular government, that is to say, "a government of the people, by the people, and for the people," we may safely assume that words in a statute or a constitution are used in the sense in which the people who made the statute or constitution understood them. So that when the people inserted in their constitution the words, "any election law," it is fair to assume that they meant any law relating to elections. It is idle to say that a statute which prescribes the hours when the polls shall open and close is an election law, while a statute which punishes bribery or fraud in an election officer is not an election law. They both relate to the same subject, and the one is as much an election law as the other.

Conceding all this, it was contended on behalf of the defendant, that primary elections are not elections at all within the meaning of the Constitution, and that a statute regulating them is not an election law.

That they come within the mischief intended to be remedied is too plain for argument. Under our frame of government a vast system of political machinery has grown up by which elections have been for many years practically controlled. It is so far-reaching in its effects that the people have in many instances little to do at the polls beyond the ratification of what had been already done by nominating conventions. Such conventions have often been controlled by the very influences which the Constitution and the Act of 1881 seek to strike down. The influence which these primary elections have for good or evil upon the politics of the country is overshadowing. In many portions of the state, as is well known, a nomination by a convention of one of the parties is practically the equivalent of an election; in some instances it is the precise equivalent, as in the case where there are two persons to elect, and the elector is allowed by law to vote for but one. The importance of the relation of the primary to the general election must be apparent to every one who does not shut his

2 AMERMAN—40

[Leonard *v.* Commonwealth.]

eyes that he may not see, and stop his ears that he may not hear. Primary elections and nominating conventions have now become a part of our great political system, and are welded and riveted into it so firmly as to be difficult of separation. The Act of 1881 recognizes this fact; it treats primary elections as part of a great system; it declares them to be elections to be regulated by law to some extent; and prescribes and punishes certain frauds committed thereat. It concerns elections in a most important sense. How then can we say that it is not an election law, when the legislature has declared that it is? Moreover the relation of nominating conventions to the general election, and the importance of that relation, is recognized by the Constitution itself. This is notably so in Article VII, which prescribes the oath of office, and which requires all senators and representatives, and all judicial, state and county officers to swear that " I have not paid or contributed, or promised *to pay or contribute, either directly or indirectly, any money or other valuable thing to procure my nomination or election,*" &c., &c.

As before observed the Constitution must be construed liberally, so as to carry out and not defeat the purpose for which it was adopted. If we give it the narrow construction claimed for it, a candidate for office might resort to all manner of bribery and fraud in procuring his nomination, yet if he conduct himself properly after his nomination, he could wholly evade the constitutional prohibition. This applies with especial force to cases where a nomination is the equivalent to an election. In such instances the nominee may well be an honest man between his nomination and election, for he has no motive to be a rogue.

By the words, " any election law," the framers of the Constitution and the people who adopted it, evidently meant to include any Act which the legislature might thereafter enact for the purpose of purifying our elections. The Act of 1881 was passed to give effect to the constitutional provision, and it matters little at what stage of the campaign the fraud is committed. It is as much an election law when it strikes at the fraud at the primary election as when it arrests the fraudulent ballot just as it is ready to be dropped into the box at the general election. We would belittle the Constitution and fritter away one of its best and wisest provisions were we to give it the narrow, technical construction claimed for it by this defendant.

We are of opinion that the Act of June 8th, 1881, is an election law within the meaning of section 9, article VIII. of the Constitution.

This disposes of all that we regard as important in the case.

A number of assignments have been filed, alleging error in some of the minor details of the trial.  Upon examining them carefully I do not find any of them of sufficient importance to justify a reversal, nor to require me to add to the length of this opinion by their discussion.

The judgment is affirmed.