STATE *v.* MATTHEWS.

(*Jackson,* April Term, 1938.)

Opinion filed May 28, 1938.

NAT TIPTON, Assistant Attorney-General, for the State.

KING WEBB, of Dresden, for defendant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendant was indicted for that being a legal voter in the Seventh Civil District of Weakley County he did vote at a primary election held in such county for the purpose of nominating candidates for various county offices in a civil district other than that of which he was a resident. The trial judge sustained the motion, quashed the indictment, and the State has appealed.

Chapter 798 of the Private Acts of 1937 was an effort to enact a primary law applicable alone to Weakley County and this Act provides that it shall be unlawful for any voter in a county primary to vote in a district other than the one in which he resides. So far as the indictment herein was rested upon this Act of 1937, the

indictment was properly quashed by the court below. The Act is plainly unconstitutional.

The caption of chapter 798 of the Private Acts of 1937 is "An Act to provide for a primary law in counties having a population of not less than 29,261, and not more than 29,265, according to the Federal Census of 1930, and to make it a misdemeanor to violate the same." Section 1 of the Act provides "That for the purpose of creating county primary laws and carrying out the provisions of this Act in all counties in this State having a population of not less than 29,261 and not more than 29,265, according to the Federal Census of 1930 or any subsequent Federal Census, there is hereby created primary laws."

It will be observed that the caption indicates an Act applicable to counties of the designated population according to the Federal census of 1930. The body of the Act undertakes to make it apply to counties of the designated population according to the Federal census of 1930 or any subsequent Federal census. The body of the Act is, therefore, distinctly broader than the caption and the Act must be held bad under Section 17 of Article 2 of the Constitution, without consideration of other constitutional objections urged against it.

The State, however, insists that the indictment may be referred to section 11329 of the Code and thereby sustained. That section of the Code is in these words:

"All voters shall be required to vote in the civil district, ward or precinct where they may reside, except as otherwise provided in this Code. Any person violating this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than twenty nor more than fifty dollars."

The defendant, on the contrary, urges that section 11329 of the Code only applies to voters in regular elections or to voters in compulsory primary elections provided for the selection of party nominees for certain State and Federal offices. Code, sections 2180-2227.

We think the contention of the State is right. Section 11329 of the Code appears in Article 19, c. 10, tit. 1, pt. 4, of that volume entitled "Offenses Against Nominating Conventions, Primaries, and Final Elections."

By the sections contained in this Article of the Code, section 11312 *et seq.,* numerous acts are denounced as illegal and punishment provided for them. Many of the statutes upon which these sections are based were enacted before the compulsory primary law and before county primaries were common. As enacted, these statutes only created offenses with respect to regular elections. Compare Shannon's Code, section 6843 *et seq.* When brought into the Code of 1932, however, these statutes quite generally in express terms were made applicable to conventions, primaries and final elections. All of them are collected in Article 19, c. 10, tit. 1, pt. 4, of the Code, headed as above stated. Obviously all were intended to apply to primary elections.

The requirement of section 11329 that "all voters" must vote in the district, ward or precinct where they reside means voters in primary elections as well as voters in final elections. Throughout Article 19 voters is used to designate those who participate in primary elections as well as those who participate in final elections.

The argument that the sections of the Code contained in Article 19 were at most only aimed at offenses committed with respect to compulsory primaries cannot be maintained. The compilers of the Code would have

deemed it unnecessary to include section 11329 in Article 19 or to include this section in the Code at all if it had been intended to relate to compulsory primaries only.

Section 1938 of Article 4, c. 2, tit. 6, pt. 1, of the Code, respecting electors in regular elections, likewise requires all voters to vote in the civil district, ward or precinct where they reside and affixes the same penalty as does section 11329 for violating the provision.

A section of the compulsory primary law (Code, section 2221) provides "all laws applying to regular or general elections not in conflict with the provisions of this chapter, shall apply to primary elections, held thereunder." We cannot believe, therefore, that the Code Commission or the Legislature would have done so idle a thing as to reproduce section 1938 of Article 4, c. 2, tit. 6, pt. 1, of the Code as section 11329 of Article 19, c. 10, tit. 1, pt. 4, of the Code if the requirement was only designed to touch compulsory primaries.

That the sections included in articles 19, c. 10, tit. 1, pt. 4, of the Code were not intended to be confined to compulsory primaries is made further evident by section 11330 of that Article that the provisions of the Article shall apply to all primary and final elections held by municipal corporations and by section 11349 forbidding "any candidate for nomination or election in any state, county, city or district office" to bargain for support. Compulsory primaries are not required of municipalities nor of counties.

Referring again to the title of Article 19, c. 10, tit. 1, pt. 4 of the Code, it is to be noticed that it deals with offenses against nominating conventions as well as offenses against primaries and final elections, and there

is no such thing as a compulsory nominating convention in this State.

■ It is true that county primaries are not required by law for the selection of candidates for county offices. Whether or not such primary elections shall be called is a matter within the discretion of the executives of each political party. If such authority, however, does call a primary, it is competent for the Legislature to regulate such an undertaking as the Legislature might have required it in the first instance. Party executives have large powers respecting county primaries but such powers must be exercised in conformity to the law. The fact that county primaries are not compulsory is beside the question before us. Most of the undertakings of men which the law regulates are voluntary in origin. That is to say, such things need not be done at all, but if they are done, they must be done as the law prescribes.

It seems evident to us that in the enactment of the Code of 1932 the Legislature intended to throw around primary elections, compulsory and voluntary, the same safeguards previously provided for the conduct of regular or final elections. As a matter of fact, county elections are quite generally more heated and more bitterly fought and tempt fraud to a greater extent than do State-wide elections.

The motion to quash contained other grounds but the only ground argued in this court is that the indictment did not rest upon any valid law. Some of the argument made in this court will be more appropriate when the case is heard on its merits.

For the reasons stated, the judgment below is reversed and the case remanded for further proceedings.