MATHES *v.* STATE.

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

E. G. TOLLETT, of Crossville, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This appeal is from a conviction for betting on an election, under an indictment charging that said Mathes,

"did unlawfully bet or wager $5.00 of good and lawful money of the United States of America with one Bob Adams that Sam Ryan, who was a candidate for the Republican nomination for Sheriff in the Republican primary election in Cumberland County, Tennessee, held on the 17th day of April, 1938, would carry the Wood's District in said election, against the peace and dignity of the State."

The jury assessed a fine of $100 against Mathes and the trial judge added a jail sentence of thirty days. The State refers the indictment to Code Section 11285, which provides that "whoever shall make any bet or wager of money, or other valuable thing, upon any election, is guilty of a misdemeanor."

The trial judge overruled a motion to quash the indictment, the motion raising the point that the offense charged in the indictment is not within the meaning of Section 11285, specifically that the Republican primary for the nomination of a sheriff for Cumberland County was not an "election", betting on which is prohibited by this statute.

Assignments of error challenge the action of the trial court in overruling this motion, and in failing to charge the jury in accordance with the position taken in the motion.

We are constrained to agree with the insistence of counsel for plaintiff-in-error that a party primary election, voluntarily arranged and managed by the County party representatives, is not an "election" within the intendment of the statute relied on for the State.

The Code Section is a codification of the Act of 1823, which was passed long before such a thing as a party primary election had ever been heard of, and of course

the original makers of this law had no thought of such a primary election. The distinction between an election proper and such a primary is recognized quite generally by the text books and decisions, and in this State we have more than one reported case in which this distinction has been recognized and emphasized.

For example, in *Ledgerwood* v. *Pitts,* 122 Tenn., 570, et seq., 125 S. W., 1036, upholding the constitutionality of our State compulsory primary law, it was held that primary elections are not ''elections'' within the meaning of our State Constitution relating to elections, the views expressed being, it would seem, equally applicable to the statute prohibiting betting on which this indictment is based, enacted in 1823, now Code Section 11285. In the course of the opinion in that case it was said [page 587]:

''The first inquiry, therefore, presented for our examination, is whether or not these provisions of the Constitution have any application at all to primary elections. Admittedly no such thing could have been in contemplation by the framers of the Constitution when they came to formulate the election and suffrage clauses of that instrument, for at that time no such thing as a primary election had ever been suggested. The object of this modern invention of political parties is primarily for the purpose of permitting and requiring the entire electorate of that party to participate in the nomination of candidates for political office. The plan is simply a substitution for the caucus or convention. It is true, as stated, it is a part of the political machinery that starts the candidate on his way, and the political party is thereby enabled to crystallize and concentrate its vote on that particular candidate who is chosen as the representa-

tive and expositor possibly of their political views; but the limitations and safeguards of the Constitution apply exclusively to the final election when the officer is chosen in the mode required by the Constitution.''

And, after reviewing cases from other jurisdictions, this Court commented, as follows: ''An examination of many of these cases has disclosed the fact that they are bottomed on two propositions, namely: (1) That such primaries are not in reality elections, but merely nominating devices; and,'' etc.  And, again: '' 'In our opinion the word ''elections'' thus used does not have its general or comprehensive significance, including all acts of voting, choice or selection without limitation, but is used in a more restricted, political sense—as elections of public officers.' *Buckner* v. *Gordon,* 81 Ky., 665; *Willis* v. *Kalmbach,* 109 Va., 475, 64 S. E., 342, 21 L. R. A. (N. S.), 1009.''

In *Lillard* v. *Mitchell,* Tenn. Ch. App., 37 S. W., 702 et seq., it was said [page 703]:

''But, while the transaction indicated in the bill in this case was a wager,  . . ., under our decisions, it cannot be said to be a bet on an election under our statutes. These statutes refer to elections held, under the law, to fill some public position or trust provided or established by law.  An arrangement to test the wish of the members of a political party as to who shall be their party nominee for a public office is not an election under our statutes, and a bet made upon the result of such a test is not a bet upon the result of an election, nor will it subject the parties to it to the consequences of the violation of our statutes relating to gambling on elections.''

Counsel for plaintiff-in-error cites text books and many authorities from other jurisdictions to the same effect,

among others *Commonwealth* v. *Wells,* 110 Pa., 463, 1 A., 310; *Leonard* v. *Commonwealth,* 112 Pa., 607, 622, 4 A., 220; *Commonwealth* v. *Helm,* 9 Ky. Law Rep., 532; *Dooley* v. *Jackson,* 104 Mo. App., 21, 78 S. W., 330; *State* v. *Simmons,* 117 Ark., 159, 174 S. W., 238.

Responding to this array of authorities the State on its brief contends that this restricted construction of the term "elections" resulted from the application of the rule that penal statutes are to be strictly construed in favor of the defendant, whereas Code Section 11285 is now embraced within the chapter entitled "gaming" and that Section 11292 of this chapter provides that all laws for the prevention of "gaming" shall be liberally construed as remedial, rather than penal. Likewise, the State submits this codification of this law against betting on elections in this chapter entitled "gaming" as a reply to the reliance for plaintiff-in-error upon holdings of this Court prior to the adoption of the Code that betting on an election did not constitute gaming. *State* v. *Smith,* 19 Tenn. (Meigs), 99, 33 Am. Dec., 132; *Deshazo* v. *State,* 23 Tenn. (4 Humph.), 275; *Smith* v. *Stephens,* 37 Tenn. (5 Sneed), 253.

*Williams* v. *Talliaferro,* 41 Tenn. (1 Cold.), 37, 39, and *Mitchell* v. *Orr,* 107 Tenn., 534, 64 S. W., 476, decided since the Code of 1858, are cited for the State in support of its contention.

It is plausibly said for plaintiff-in-error, however, that these cases are not in point, that the wager in the Williams Case was made in a general election, and in the Orr Case wholly different statutes were involved, and, that while it was held that land transferred in consideration of a wager on a primary election might be recovered under these statutes (Shannon's Code, sections

3159 and 3161, taken from Acts of 1799, Chap. 8, declaring all wagering contracts void), the Court in its opinion expressly recognized that there is a distinction between a legal election and a so-called primary election. The Court said that the rule of recovery laid down under the statutes invoked would apply to every wager upon an uncertainty, that it would embrace every form of selection, test or designation, "upon the result of a convention or mass meeting". But we find nothing in these cases in conflict with the general holdings that "election", as used in statutes penalizing betting on elections, does not include a primary adopted as a method of nomination of candidates to be voted for in a general or final election.

Whether the statute be considered as remedial or not, before a conviction can be sustained under it, the terms relied on must fairly, according to general acceptance, support the construction put thereon. If the word under consideration plainly means one thing, and not another, it is not permissible by construction to depart from this plain meaning and give it another. "It is only when the words employed are of doubtful meaning, that, in order to give effect to the legislative intention, the duty of construction arises." Endlish on Interpretation of Statutes, Secs. 329, 330. In line with the great weight of authority, as already shown, we are not of opinion that the terms used in this Code Section may be extended to include a voluntary party nominating plan, such as we have here, and such as is described in *Lillard* v. *Mitchell, supra.*

The State also cites and relies on the recent case of *State* v. *Matthews,* 173 Tenn., 302, 117 S. W. (2d), 2. It was held in that case that [page 305, *supra*], "The requirement of section 11329 that 'all voters' must vote in

the district, ward or precinct where they reside means voters in primary elections as well as voters in final elections''. This Code section is found in Art. 19, ch. 10, tit. 1, pt. 4, of the Code, entitled, ''Offenses Against Nominating Conventions, Primaries, and Final Elections.'' It was held that ''obviously'' all the statutes regulating elections, brought forward into the Code of 1932 in this Article, and under the heading above recited, applied alike to ''Primaries and Final Elections''. If Section 11285 before us in the instant case had been brought into the Code under the title heading under which Section 11329, considered in *State* v. *Matthews,* appears, doubtless a similar holding would be made, but while the Code so places 11329, it was not seen fit to so treat this Section, 11285, which is codified under Article XIV. There is nothing in the opinion in *State* v. *Matthews* supporting the contention that, independently and apart from its inclusion in Article XIX, headed to expressly include primaries with ''Final Elections'', a primary, such as we have here, would be held to be within the term ''election'' in Code Section 11285 making betting thereon a misdemeanor.

It results that the judgment of conviction is reversed and the case dismissed.