## In re Moskowitz

568

*Marshall H. Morgan*, for appellant.

*A. E. Hurshman*, contra.

KALODNER, J., April 27, 1936.—This is an appeal from the action of the registration commissioners of Philadelphia in striking the name of David Moskowitz from the registers of the sixth election division of the second ward in the City of Philadelphia, following a hearing on April 17, 1936. The strike-off by the registration commission was under article VIII, sec. 9, of the Constitution of Pennsylvania, which provides:

"Any person who shall, while a candidate for office, be guilty of bribery, fraud, or wilful violation of any election law, shall be forever disqualified from holding an office of trust or profit in this Commonwealth; *and any person convicted of wilful violation of the election laws shall, in addition to any penalties provided by law, be deprived of the right of suffrage absolutely for a term of four years.*" (Italics ours.)

It appeared that Moskowitz was found guilty on March 12, 1936, of violating The Personal Registration Act of July 10, 1919, P. L. 857, sec. 51, by interfering with an inspector of registration in the performance of his duties, and was fined $50.

The section under which he was convicted provides as follows:

"Any person who intentionally interferes with, hinders, or delays any other person in the performance of any

act or duty authorized or imposed herein, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine not exceeding five hundred dollars."

The questions presented for our consideration are whether The Personal Registration Act of July 10, 1919, P. L. 857, is an election law within the meaning of article VIII, sec. 9, of the State Constitution, disqualifying persons convicted of willful violations of the election laws from enjoying the right of suffrage for four years, and whether the action of the registration commission in striking off Moskowitz's name from the registry list because of his conviction is thereby justified.

The Personal Registration Act of 1919, supra, and the line of personal registration acts preceding it, were enacted for the sole purpose of insuring the purity of elections. Our legislatures have long recognized that the purity of elections sought by the Constitution can be accomplished only through the creation of a system of election laws which will sift out the unqualified voters from the qualified at the very outset of the election process.

Motivating the enactment of our registration laws was the conviction of our legislatures that under prior existing election laws, adequate opportunity was lacking to detect the unqualified voter and prevent him from casting his ballot on election day. Through the operation of the registration laws, greater opportunity has been afforded to the public generally and to specially created governmental agencies to ferret out election frauds by the purging of the lists of electors in advance of election day. Our registration laws have been our most effective agency in the curbing of election frauds. Certainly, in the operation of The Personal Registration Act of 1919, there has been a correction of shocking evils which in the past frequently operated to nullify the vote of qualified electors in Philadelphia on election day. In brief, our registration laws have been predicated on

the well-grounded assumption that an ounce of prevention is worth a pound of cure.

"That election is free and equal where all of the qualified electors of the precinct are carefully distinguished from the unqualified, and are protected in the right to deposit their ballots in safety, and unprejudiced by fraud": Patterson et al. v. Barlow et al., 60 Pa. 54, 76 (1869).

Significantly, in the case just cited, our Supreme Court, in an opinion by Mr. Justice Agnew, held that the first of our registration acts, the Registration Act of April 17, 1869, P. L. 49, was constitutional as an "election law". Following the Act of 1869, legislatures, in 1874, 1906, 1907, 1911, 1913, and lastly in 1919, have enacted registration laws creating additional safeguards against fraud in our election system. Thus, in the enactment of these registration laws and the enactment of our primary election law, our entire election process has been divided into three separate and distinct stages: (1) registration, (2) primary election, (3) election (municipal and general).

Our Supreme Court, in the case of Leonard v. Commonwealth, ex rel., 112 Pa. 607, 624 (1886), said:

". . . many of the frauds which affect elections, and sometimes thwart the will of the people, are perpetrated in what may be termed the preliminary stages of an election; in those proceedings by means of which candidates are selected for the people to vote for at the general election."

In that case, Leonard was convicted of bribing delegates to a nominating convention while he was a candidate for the nomination for the office of county commissioner. In behalf of the defendant Leonard, it was contended that the Act of June 8, 1881, P. L. 70, was not an election law within the terms of the State Constitution, which became effective 12 years prior to that case. Said Mr. Justice Paxson, at pages 620 and 624, in respect to that contention:

"The Constitution provides for the future as well as for the present. Hence when it speaks of a violation of any election law, it does not mean merely such election laws as were in force when it was adopted. The opposite view would be extremely narrow, and with a change in the election laws this valuable clause in the organic law would drop out. It means any election law then in existence or thereafter to be passed by the legislature, which that body had a right to pass. I do not understand this view to be seriously controverted; the objection to the Act of 1881 is that it relates only to primary elections, nominating conventions, and the like, and not to the general election at which candidates previously nominated are voted for and elected to office; that laws regulating primary elections are not such election laws as are contemplated by the article of the Constitution above quoted. . . .

"The clause of the Constitution referred to must receive a liberal construction. It is to be interpreted so as to carry out the great principles of government, not to defeat them. . . . The object aimed at in the constitutional provision was the purification of our elections."

Ten years earlier, in the case of Commonwealth, ex rel., v. Walter, 83 Pa. 105, 107 (1876), Mr. Justice Paxson, in discussing article VIII, sec. 9, of the State Constitution, said:

"The object of this provision in our fundamental law is manifest. The frequency and extent of election frauds were beginning to awaken serious apprehension for the future unless promptly checked. A fraud upon the ballot is a crime against the nation. Hence it was that the framers of the Constitution sought to arrest the evil by embodying in the fundamental law the provision referred to. It is our duty to give it such a construction as will carry out the intent apparent on its face, and the object which the people had in adopting it."

Again, in Cusick's Election, 136 Pa. 459, 467 (1890), Mr. Chief Justice Paxson, in holding constitutional the

Registry Act of January 30, 1874, P. L. 31, entitled: "A further supplement to the act regulating elections in this Commonwealth", said:

"Lightly as many persons appear to regard the right of citizenship, the history of the government fully bears out the assertion that the exercise of the elective franchise has been productive of a vast amount of fraud. And it is a kind of fraud that strikes at the integrity and imperils the existence of free government. . . . The legislature has from time to time passed various laws to regulate elections. Their object has always been to preserve the purity of the ballot."

In view of the foregoing, it is our opinion that The Personal Registration Act of 1919 is beyond doubt "an election law" within the intent of the Constitution and the meaning of article VIII, sec. 9, of the State Constitution.

The very language of the title of the act demonstrates this conclusively: "To provide for the personal registration of electors as a condition of their right to vote at elections, and their enrollment as members of political parties as a further condition of their right to vote at primaries".

In considering the determination of the phrase "election law", we must, as Justice Paxson said in the case of Leonard v. Commonwealth, ex rel., supra, p. 625, "bring to our aid the common and popular use of words." As Justice Paxson said:

"Our laws are intended for the people, who are presumed to read and understand them. They are not like the edicts of the Roman Emperor Caligula, which, Dio Cassius says, were written in very small characters and hung up so high that the people could not read them. When laws are made by a popular government, that is to say, 'a government of the people, by the people, and for the people,' we may safely assume that words in a statute or a constitution are used in the sense in which the people who made the statute or constitution understood them. So that when the people inserted in their constitution the words, 'any election law,' it is fair to

assume that they meant any law relating to elections. It is idle to say that a statute which prescribes the hours when the polls shall open and close is an election law, while a statute which punishes bribery or fraud in an election officer is not an election law. They both relate to the same subject, and the one is as much an election law as the other."

Holding as we do that The Personal Registration Act of July 10, 1919, P. L. 857, is an election law, it would indeed be inconsistent to sustain the contention of the appellant Moskowitz that only one who is guilty of fraud on election day is subject to the penalty of loss of suffrage imposed by the State Constitution, and that he who commits fraud at the inception of the election process by violation of the registration act can escape the penalty imposed by the Constitution. It would create an anomalous situation, impossible of explanation or justification, if we were to attach less significance to a law intended to curb election crimes at the very threshold than to one dealing only with crimes committed upon election day at the polling places.

Accordingly, the appeal of the appellant, David Moskowitz, from the order of the registration commissioners of Philadelphia is dismissed. Costs of the appeal to be paid by the said appellant.

### Opinion sur reargument

PER CURIAM, June 11, 1936.—The only question presented for our determination when this case was originally before us was whether The Personal Registration Act of July 10, 1919, P. L. 857, for a violation of which the appellant, David Moskowitz, was convicted, is an election law, within the meaning of article VIII, sec. 9, of the Constitution, which provides that:

"Any person . . . convicted of wilful violation of the election laws shall, in addition to any penalties provided by law, be deprived of the right of suffrage absolutely for a term of four years."

On appeal to the Supreme Court from our decision that the registration act is such a law, within the meaning of that constitutional provision, Moskowitz filed a petition for reargument, in which he requested that the court hear and consider an additional contention, which he had not previously advanced, either before us or on the argument of the appeal. This contention, as set forth in his petition, is that he cannot lawfully be deprived of his right of suffrage "unless the Court of Quarter Sessions of Philadelphia County, in which he was convicted on March 12, 1936, had imposed sentence of deprivation of the right", and that, since that court omitted to do so, the registration commission had "no legal right to cause the appellant's name to be stricken from the registration list by reason of his conviction." Thereupon, without deciding the appeal, the Supreme Court made an order remitting the record to us to "consider the new question therein raised as part of the record in such hearing and proceeding that it shall deem appropriate and proper, and make such order in the premises that may be required by law."

We take it that our present consideration of the case is restricted to the question or questions thus raised by the petition for reargument. That the appellant was convicted and fined for intentionally interfering with an inspector of registration in the performance of his official duties, and that this offense constitutes a willful violation of an election law, has been established by our previous decision in this case. In sentencing the appellant, however, the quarter sessions court failed to include in its sentence an order depriving him of his right of suffrage for the prescribed period. The question to be determined now, therefore, is whether article VIII, sec. 9, of the Constitution is self-executing, so as automatically to impose the constitutional disability upon a person convicted of a violation of the election laws; or whether it becomes operative only after an order to that

effect is entered by the court on a conviction for such an offense.

It would have been lawful and proper for the court of quarter sessions to have added to its sentence of Moskowitz a sentence or order depriving him of the right of suffrage for the prescribed period, and had it done this the instant question would not have arisen. Such orders are frequently incorporated in sentences and have received judicial approval: Commonwealth, ex rel., v. Davis, 299 Pa. 276; Commonwealth v. Pennock, 3 S. & R. 199; Commonwealth v. Harris, 1 Leg. Gaz R. 455. The regular adoption of such a practice is to be commended, for it tends to certainty in the enforcement of disabilities by providing a permanent and indisputable record of the status of a convicted offender. In some instances, indeed, a judicial order may be necessary to give effect to the constitutional mandate, as, for instance, when an affirmative act is directed, such as the removal of an offender from office. Admitting, therefore, the propriety and desirability of including an order of disfranchisement in the sentence imposed for the criminal offense, the question remains whether such an order is a prerequisite to attaching the constitutional disability to the convicted individual. If it is, the appellant is entitled to have his name restored to the register, and, if it is not, he cannot complain that its removal deprives him of the right of suffrage which he has lost by his conviction.

Appellant contends, in effect, that the constitutional provision upon this subject is not self-executing, and that the inadvertent failure of the quarter sessions court to order his disfranchisement exempts him from the operation of the Constitution and enables him to exercise the rights of an elector of which that instrument expressly declares he shall be deprived.

With this contention we do not agree. The clause in question is manifestly self-executing:

"Any person . . . convicted of wilful violation of the election laws shall, in addition to any penalties provided by law, be deprived of the right of suffrage absolutely for a term of four years."

The electoral disability here decreed falls upon "any person . . . convicted", not as a part of the conviction, but as a consequence of it, and is imposed by the Constitution "in addition to any penalties provided by law". While it is true that, in a general sense, an imposed disability partakes of the nature of punishment, and therefore penalty, we think that the framers of the Constitution looked upon the alteration of the convicted person's status as an elector as a means of preserving the integrity of the electorate, rather than as a mere additional penalty to be added to such penalties as may be provided by law for the offense involved. In this connection the phraseology employed is not without significance. The words used are that the convicted person shall "be deprived of the right of suffrage". This deprivation can occur only when the individual attempts to exercise that right by voting. It is the enjoyment of the right of which he is to be deprived and this can be effectively denied him only when he seeks to exercise it. Moskowitz was not asserting the right when he was sentenced, and any order then made would have been merely prospective in character, and, though valuable for the purpose already indicated, would have been of little aid in the practical and effective enforcement of the constitutional disability. We see nothing, therefore, in the language of article VIII, sec. 9, of the Constitution which either expressly or impliedly requires an order of court to render it operative, or which obliges others, in the absence of such an order, to ignore its provisions by permitting a person under its ban to exercise the right of suffrage of which it has deprived him. To hold otherwise would subject the operation of the fundamental law to the will or neglect of a particular judicial tribunal. The discretionary power to suspend the operation of the Constitution in some cases

and enforce it in others has never been conferred upon the courts.

Turning now to a consideration of the authorities, we find none in this State or in other jurisdictions which directly rule the question before us. Commonwealth, ex rel., v. Davis, 299 Pa. 276, relied on by the appellant, is not in point. In that case a writ of mandamus was granted against the treasurer of the City of Johnstown to compel him to honor warrants drawn upon city funds by the acting mayor of the city. Cauffiel, the mayor, had been convicted on a charge of misbehavior in office, and the quarter sessions court in sentencing him had entered an order removing him from office in accordance with the provisions of article VI, sec. 4, of the State Constitution, which, in language very similar to the section here under consideration, provides that all officers shall, on conviction of misbehavior in office, be removed. The mayor claimed that he could be removed only in the manner provided by the Constitution; that the quarter sessions court had no power to enter a decree removing him, and notified the treasurer of the city not to honor warrants drawn by anyone other than himself. The treasurer having refused to honor warrants drawn by the acting mayor, the Supreme Court affirmed the award of a mandamus by the common pleas compelling him to do so on the ground that the quarter sessions court had jurisdiction to enforce the constitutional mandate by an order removing the convicted mayor from office. In the opinion by Mr. Justice Simpson it was held, first, that article VI, sec. 4, of the Constitution was self-executing and mandatory, second, that the section which prescribed a particular method for the removal of certain public officers did not apply to the mayor, that any procedure appropriate for the removal of public officers, such as quo warranto, impeachment before a municipal legislature, or an order of the quarter sessions entered upon a conviction, could be employed to declare and carry out the constitutional forfeiture, and third, that it was not only the right but

the duty of the convicting court in that case to apply the remedy available to it in vindication of the constitutional mandate.

While the Supreme Court thus held that a mandatory constitutional provision must be recognized and carried out by the quarter sessions court when the occasion arises, the language of the decision supports rather than negatives the conclusion reached by us. It expressly holds that such constitutional enactments are self-executing, and that any apt procedure may be resorted to whenever it becomes necessary to insure their enforcement. This is far from holding that a failure of the quarter sessions court to act stays the operation of the Constitution and prevents other courts from enforcing it. Yet such is the contention of this appellant, and we see no ground for upholding it in either reason or authority. Whenever action is predicated upon circumstances affected by a constitutional or legal enactment, the action must be performed in obedience to the enactment. This is especially so when it deals with a status or a right which, from its very nature, requires no further action for its creation. Thus a conviction of perjury carries with it the personal disqualification to take an oath, regardless of whether the sentence contains a declaration to that effect. So also, when a conviction for burglary carried with it a forfeiture of goods, the court said in Commonwealth v. Pennock, 3 S. & R. 199, that "the law would have implied the forfeiture, though not part of the Judgment." Again, in Commonwealth v. Shaver, 3 W. & S. 338, which was a quo warranto against a sheriff who had been convicted of a certain offense and sentenced to a fine and imprisonment, but against whom no order of removal or disqualification from office had been entered by the trial court, the Supreme Court, in dismissing the proceeding on other grounds, said (p. 340) :

"It is very clear that sheriffs, as well as all other officers holding their respective offices for a term of years only, are embraced within this provision of the constitution,

so that the respondent, though duly elected and commissioned to the office of sheriff, cannot claim to hold it after he has been *convicted of misbehavior in it,* or of any *infamous* crime."

From the foregoing authorities we conclude that a sentence by the quarter sessions court on a conviction is not the exclusive method by which a constitutional disqualification or disability can be enforced. Whenever a person asserts a right which the Constitution denies to him, the proceeding in which it is asserted is appropriate to determine the question. Therefore, in registering or striking off names the local registrars and the registration commission act in a quasi-judicial capacity. They are not mere instruments for the automatic registering of all who present themselves. On a challenge of one offering himself for registration, or on a petition to the registration commission to strike off a name improperly registered, it is the duty of the registrars or the commission, as the case may be, to demand and receive proof of the qualification of the person whose right to be registered is involved. In this respect, true judicial functions are performed by such officers. A challenge on the ground of residence or citizenship, or any challenge which goes to the qualification of the person challenged to exercise the right of franchise, must, of necessity, be determined by them in the first instance. When, therefore, the petition was presented to the registration commission in this case to strike off the name of the appellant, and that body received indisputable record proof of his conviction of a willful violation of the election laws, they had the power, and it was their duty, to give effect to the Constitution by striking his name from the register.

Passing over this question, however, we think this appellant is estopped from invoking our aid to put his name back upon the register of voters. Whether or not the registration commission rightly struck off his name, it is no longer on the register. Under the registration law his appeal from the action of the registration commission

comes to us de novo, and he is now, in effect, invoking our process to restore his name to it. He submits himself to our jurisdiction and asks us to determine his right to be registered. That right depends upon whether he possesses the necessary qualifications of a voter, and from both the evidence before us and his own admission he stands convicted of a willful violation of the election laws. We cannot close our eyes to the constitutional disqualification under which he labors; and he cannot demand that we assist him with our process in his effort to defy the provisions of the Constitution. It is clearly our duty to deprive him of the right of suffrage, as the Constitution directs, by dismissing his petition.

For the foregoing reasons, we are of the opinion that, because of his conviction on March 12, 1936, of a willful violation of an election law, the appellant, David Moskowitz, is not entitled to have his name restored to the register of qualified voters in the sixth division of the second ward of the City of Philadelphia, and accordingly the petition is dismissed.