Usha HALEY

v.

UNIVERSITY OF TENNESSEE–KNOXVILLE, et al.

Supreme Court of Tennessee, at Nashville.

Jan. 4, 2006 Session at Knoxville.

March 17, 2006.

Irwin Venick, Nashville, Tennessee, and Carol S. Nickle, Knoxville, Tennessee, for the Petitioner, Usha Haley.

Paul G. Summers, Attorney General & Reporter; Michael E. Moore, Solicitor General; Kimberly J. Dean, Deputy Attorney General; and Devon L. Gosnell, Associate General Counsel, University of Tennessee, for the Respondents, University of Tennessee–Knoxville and Jan Williams.

## OPINION

E. RILEY ANDERSON, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

We accepted a question of law certified by the United States District Court for the Eastern District of Tennessee to determine whether a voluntary non-suit before the Tennessee Claims Commission activates the waiver provision of Tennessee Code Annotated section 9–8–307(b) (2005), barring a federal or state cause of action arising from the same act or omission as the claim before the Claims Commission. We hold that it does. We also hold that Tennessee Supreme Court Rule 23 authorizing the certified question procedure is not an impermissible extension of this Court's jurisdiction under the Tennessee Constitution.

Pursuant to Rule 23 of the Tennessee Rules of the Supreme Court, the United States District Court for the Eastern District of Tennessee has certified a question to this Court. The question arose in the course of a lawsuit brought by petitioner Usha Haley ("Haley") against respondent University of Tennessee ("U.T.").

### Background

According to the federal district court's certification order, U.T. hired Haley as an Associate Professor of Management in 2000. The position had a three-year probationary period, with consideration for tenure no later than the end of the 2001–02 academic year. Haley applied for tenure and promotion in the 2001–02 academic year. She was denied tenure and promotion on May 28, 2002.

Haley filed an action against U.T. in the federal district court on May 23, 2003, alleging a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, based on gender and national origin discrimination. Haley also alleged a violation of 42 U.S.C. § 1983 by the Dean of the Business College. On April 21, 2004, Haley filed a claim for breach of contract with the Tennessee Claims Commission. In addition, she has also filed a complaint in the Knox County Chancery Court alleging a violation of the Tennessee Human Rights Act.

On June 4, 2004, U.T. filed a motion in federal district court to dismiss Haley's claim on the ground that the district court lacked jurisdiction, because by filing a claim with the Tennessee Claims Commission, Haley had waived all causes of action related to her failure to obtain tenure. The waiver provision of the Tennessee Claims Commission Act states:

> Claims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee. The waiver is void if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment.

Tenn.Code Ann. § 9–8–307(b) (Supp.2005). Later, on July 2, 2004, Haley withdrew her claim before the Claims Commission. The Commission entered an "Order of Dismissal without Prejudice" on August 19, 2004. U.T. argued to the district court that Haley's claim for breach of contract filed with the Claims Commission bars her suit in district court, even though the Claims Commission dismissed it without prejudice.

The federal district court did not rule on the motion to dismiss the federal action. Instead, the federal court certified the following question to this Court:

> Does the withdrawal or voluntary nonsuit of a claim filed with the Tennessee Claims Commission, done prior to any action being taken by the Claims Commission, still activate the waiver provision of Tennessee Code Annotated section 9–8–307(b) to require dismissal of a plaintiff's federal and/or state cause of action arising from the same act or omission as the claim before the Claims Commission?

We accepted the certified question.

### Analysis

In addition to the dispute that is the basis of the certified question, the parties have also raised the question of whether the Supreme Court has the authority to answer the certified question. We address that issue first.

#### Certified Questions

Rule 23 of the Tennessee Rules of the Supreme Court provides:

The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

Tenn. Sup.Ct. R. 23, § 1. This Court adopted Rule 23 in 1989 and has since accepted and answered numerous certified questions from the federal courts. In spite of the fact that the rule has been in place for seventeen years, U.T. argues that it is unconstitutional and that this Court lacks jurisdiction to decide the certified question. For the following reasons, we reject U.T.'s argument.

■ A certification procedure permits a state's highest court to accept and answer a question of state law certified to it by the federal court to assist the federal court in deciding a question of state law. *See* 17A Charles Alan Wright, Edward H. Cooper & Arthur R. Miller, *Federal Practice & Procedure* § 4248 (2d ed.1988). A majority of states have in place a procedure similar to our Rule 23. *See id.* § 4248 n. 30. As the United States Supreme Court recognized in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case [in federal court] is the law of the state." In cases where the "law of the state" is unclear, absent a certification procedure the federal court must either "(1) guess at the law and risk laying down a rule which may later prove to be out of harmony with state decisions ... or (2) abstain from deciding the case until the state courts pass upon the point of law involved." *In re Elliott*, 74 Wash.2d 600, 446 P.2d 347, 350 (1968) (en banc). Certification procedures assist the federal courts in correctly disposing of state law issues without incurring the delay inherent in the abstention process. *See* Theodore B. Eichelberger, *Certification Statutes: Engineering a Solution to Pullman Abstention Delay*, 59 Notre Dame L.Rev. 1339, 1349–52 (1984). Certification thus "save[s] time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974).

More importantly, the certification procedure protects states' sovereignty. "To the extent that a federal court applies different legal rules than the state court would have, the state's sovereignty is diminished [because] the federal court has made state law." *Scott v. Bank One Trust Co., N.A.*, 62 Ohio St.3d 39, 577 N.E.2d 1077, 1080 (1991). Such an impact on state sovereignty "is no small matter, especially since a federal court's error may perpetuate itself in state courts until the state's highest court corrects it." *Id.* (citation omitted).

Notwithstanding the strong policy arguments weighing in favor of a certification procedure, U.T. argues that because this Court's jurisdiction is limited by the Tennessee Constitution to appellate jurisdiction, the Court lacks jurisdiction to answer certified questions. Article VI, section 2 of the Tennessee Constitution provides that the jurisdiction of the Supreme Court "shall be appellate only, under such restrictions and regulations as may from time to time be prescribed by law; but it may possess such other jurisdiction as is

now conferred by law on the present Supreme Court." *See also* Tenn.Code Ann. § 16-3-201 (Supp.2005).

■ We have consistently held that Article VI, section 2's grant of power limits this Court to adjudicating appellate matters only. *See, e.g., Peck v. Tanner*, 181 S.W.3d 262, 265-66 (Tenn.2005) (appellate courts may not proceed as triers of fact); *In re E.N.R.*, 42 S.W.3d 26, 31-32 (Tenn. 2001) ("This Court 'is a court of appeals and errors ... limited in authority to the adjudication of issues that are *presented and decided* in the trial courts....'"); *In re Cumberland Power Co.*, 147 Tenn. 504, 249 S.W. 818, 818-19 (1923); *but see Belmont v. Bd. of Law Exam'rs*, 511 S.W.2d 461, 462 (Tenn.1974) (Court has "original power" to review petition directly from Board of Law Examiners because of Court's inherent authority to prescribe and administer rules for licensing of attorneys). In construing the scope of our jurisdiction under Article VI, section 2, however, we have in the past been concerned exclusively with the Court's authority to adjudicate, that is, to finally settle, disputes before this Court. Because answering a certified question is not an adjudicative function, it is not an exercise of this Court's jurisdiction and is not prohibited by Article VI, section 2.

■ As we have previously explained, "[j]urisdiction is [the] lawful authority of a court to adjudicate a controversy brought before it; jurisdiction of the subject matter is conferred by the constitution and statutes, jurisdiction of the parties is acquired by service of process." *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn.1977) (citation omitted). In other words, a court only exercises its "jurisdiction" when it is called upon to "adjudicate a controversy." *Id.* To "adjudicate" is not simply to render a decision or an opinion. To "adjudicate" means "[t]o settle in the exercise of judi-cial authority. To *determine finally*." *Black's Law Dictionary* 42 (6th ed.1990) (emphasis added). This definition is consistent with the meaning of "adjudicate" as it is used in Tennessee case law and rules. *See, e.g., Reece v. Findlay Indus., Inc.*, 83 S.W.3d 713, 717 (Tenn.2002) (trial judge improperly delegated duty to "adjudicate" workers' compensation cases to clerk and master where judge heard cases but clerk and master wrote orders and judgments disposing of cases); *Bayberry Assoc. v. Jones*, 783 S.W.2d 553, 558 (Tenn.1990) (trial court order in putative class action was not final and appealable because it did "not dispose of or adjudicate any claims of the class"); *see also* Tenn. R.App. P. 3(a) ("... any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties."); Tenn. R. Civ. P. 54.02 ("... any order ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties....").

■ We do not exercise our jurisdiction unless we finally dispose of a cause. Answering a certified question does not finally dispose of the cause; it merely informs the district court, which retains jurisdiction over the cause, how to interpret the state law at issue. Thus, "[b]y answering a state-law question certified by a federal court, we may affect the outcome of federal litigation, *but it is the federal court who hears and decides the cause*." *Shebester v. Triple Crown Insurers*, 826 P.2d 603, 606 n. 4 (Okla.1992) (citation omitted).

■ Our power to answer certified questions comes, then, not from the Ten-

nessee Constitution's grant of jurisdiction. Rather, our power to answer certified questions is grounded in Article VI, section 1 of the Constitution. That section provides that "[t]he judicial power of this State shall be vested in one Supreme Court and in such Circuit, Chancery and other inferior Courts as the Legislature shall from time to time, ordain and establish; in the Judges thereof, and in Justices of the Peace." Tenn. Const. art. VI, § 1. As the head of the judiciary, this Court is "the repository of the inherent power of the judiciary in this State." *In re Petition of Burson*, 909 S.W.2d 768, 772 (Tenn. 1995) (citations omitted). As an exercise of that inherent power, it is within the realm of the Court's authority to answer questions certified to us by the federal courts.

The inherent power of the Court consists of all powers "reasonably required to enable a court to perform efficiently its judicial functions, to *protect its dignity, independence and integrity,* and to make its lawful actions effective. These powers are inherent in the sense that they exist because the court exists...." Eugene L. Shapiro, *Separation of Powers and the Inherent Powers of the Judiciary under the Tennessee Constitution,* 61 Tenn. L.Rev. 691, 696 (1994) (quotation and citation omitted); *see also Sun Ins. Office, Ltd. v. Clay,* 133 So.2d 735, 742 (Fla.1961) ("It is a fundamental principle of constitutional law that each department of government, whether federal or state, has without any express grant, the inherent right to accomplish all *objects naturally within the orbit of that department....*") (quotation and citations omitted).

We have stated that answering certified questions not only furthers judicial efficiency and comity, but also protects this state's sovereignty against encroachment from the federal courts. Answering certi-

fied questions thus protects the "dignity, independence and integrity" of not only this Court but of the state as a whole and is therefore within the inherent power of this Court. As a sovereign state, Tennessee has "the power to exercise and the responsibility to protect" the sovereignty granted to it by the United States Constitution. *Scott,* 577 N.E.2d at 1079. We agree with the Ohio Supreme Court's observation that

> The state's sovereignty is unquestionably implicated when federal courts construe state law. If the federal court errs, it applies law other than [state] law, in derogation of the state's right to prescribe a "rule of decision." By allocating rights and duties incorrectly, the federal court both does an injustice to one or more parties, and frustrates the state's policy that would have allocated the rights and duties differently. The frustration of the state's policy may have a more lasting effect, because other potential litigants are likely to behave as if the federal decision were the law of the state. In that way, the federal court has, at least temporarily, made state law of which the state would have disapproved, had its courts had the first opportunity to pass on the question.

*Id.* at 1080 (quotation and citation omitted); *see also Shebester,* 826 P.2d at 606 n. 4 ("This court needs no explicit grant of jurisdiction to answer certified questions from the federal court; such power comes from the United States Constitution's grant of state sovereignty."). We therefore hold that we may answer certified questions consistent with the inherent power of this Court and with our responsibility to protect the sovereignty of the state.

### Merits

■ The certified question asks us to construe the waiver provision of Tennessee

Code Annotated section 9–8–307(b). Petitioner Haley argues that the waiver should not be enforced when a claimant receives a voluntary dismissal without prejudice from the Claims Commission. Respondent U.T. argues that because section 9–8–307(b) provides that the "fil[ing]" of a claim "shall operate as a waiver," the fact that a claim is later voluntarily dismissed is irrelevant; the waiver becomes operational at the time of filing. For the reasons that follow, we agree with U.T.

The Tennessee Claims Commission Act, Tenn.Code Ann. § 9–8–301 et seq., waives the state's sovereign immunity and provides claimants with a cause of action—and a deep pocket—that they would not otherwise be able to pursue. In exchange for this waiver of immunity, the Claims Commission Act imposes a strict election of remedies requirement. The moment the plaintiff's claim is "filed" with the Claims Commission, the plaintiff has waived all other causes of action against any state officer or employee based on the same act or omission. Tenn.Code Ann. § 9–8–307(b).

■ The words of the statute are plain: filing the claim waives all other causes of action against any state officer or employee based on the same act or omission. "Where the language contained within the four corners of a statute is plain, clear, and unambiguous ... 'the duty of the courts is simple and obvious, namely, to say sic lex scripta ["thus is the written law"], and obey it.'" *Carson Creek Vacation Resorts, Inc. v. State of Tenn. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn.1993) (quoting *Miller v. Childress*, 21 Tenn. 320, 321–22 (1841)). Because "the words of [the] statute plainly mean one thing they cannot be given another meaning by judicial construction." *Henry v. White*, 194 Tenn. 192, 250 S.W.2d 70, 72 (1952) (citing

*Mathes v. State*, 173 Tenn. 511, 121 S.W.2d 548, 550 (1938)).

Haley argues, however, that a voluntary dismissal or non-suit before the Claims Commission leaves the situation as if the claim had never been brought, effectively reversing the activation of the waiver that occurred upon the filing of the claim. However, in our view, once the claim has been filed and the waiver has been activated, it cannot be "undone." The statute provides that *filing* the claim activates the waiver, regardless of the subsequent disposition of the claim. *See White by Swafford v. Gerbitz*, 860 F.2d 661, 662 (6th Cir.1988) (holding that section 9–8–307(b) "dictates that" plaintiffs waive cognate federal actions upon "elect[ing] to sue the state before the Tennessee Claims Commission"). In light of the Legislature's unambiguous pronouncement in enacting the Claims Commission Act, we hold that the waiver provision of Tennessee Code Annotated section 9–8–307(b) is activated upon filing of the claim, even if the claim is later voluntarily withdrawn or non-suited.

### Additional Questions Posed by the Petitioner

Petitioner Haley asks this Court to answer two questions in addition to the certified question. Those questions are: (1) whether the waiver clause applies to her claim because U.T. is not a "state officer or official," and (2) whether her federal claims are based on the same acts or omissions as her claims before the Claims Commission. We decline to answer these questions as they are outside the scope of the question certified to us by the district court.

### Conclusion

For the foregoing reasons, we hold that Rule 23 is a constitutional and appropriate exercise of this Court's inherent power.

We also hold that the withdrawal or voluntary non-suit of a claim before the Claims Commission activates the waiver provision of Tennessee Code Annotated section 9–8–307(b). Costs shall be taxed to the petitioner, Usha Haley.