# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 19, 2016 Session

## TIMOTHY SUMNER v. CAMPBELL CLINIC PC, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00444412      Robert L. Childers, Judge**

_____

**No. W2015-00580-COA-R3-CV – Filed March 29, 2016**
_____

This lawsuit centers on allegations that the Plaintiff received improper medical care at the hands of several Defendants. However, the present appeal concerns only the trial court's dismissal of the Plaintiff's claims against a single Defendant, Dr. Jeffrey Kutsikovich ("Dr. Kutsikovich"), a resident physician employed by the University of Tennessee. The trial court was of the opinion that the Plaintiff's amended complaint stated only "tort medical battery claims" against Dr. Kutsikovich and that these claims were barred by the applicable one-year limitation period. On appeal, the Plaintiff asserts that the trial court erred in classifying his claims and in determining that they were barred by the statute of limitations. Dr. Kutsikovich contends that the trial court's dismissal was proper, not only for the stated grounds, but also due to waiver under Tennessee Code Annotated section 9-8-307(b) and the doctrine of sovereign immunity. Having reviewed the record transmitted to us, we conclude that the Plaintiff waived his claims against Dr. Kutsikovich in this case by asserting a claim against the State under the Tennessee Claims Commission Act. Accordingly, we affirm the trial court's dismissal of Dr. Kutsikovich from this case, albeit for a different reason than held by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON and KENNY ARMSTRONG, JJ., joined.

Joseph Michael Cook, Germantown, Tennessee, for the appellant, Timothy Sumner.

Rebecca P. Tuttle, Memphis, Tennessee, for the appellee, Dr. Jeffrey Kutsikovich.

# OPINION

## Background

On July 19, 2011, Plaintiff Timothy Sumner ("Mr. Sumner") was admitted to the Regional Medical Center in Memphis in order to receive treatment for an injured right leg.[1] As part of his treatment, Mr. Sumner was scheduled to undergo a surgery that involved the taking of a bone graft from the iliac crest of his hip. Because Mr. Sumner had recently undergone another surgery to repair a "right lower quadrant ventral hernia," he and his parents made it repeatedly known to his treating doctors, including Dr. Kutsikovich, that he did not want the bone graft to be taken from his right hip in the July 19 surgery. Notwithstanding these instructions, an incision was made into Mr. Sumner's right hip during surgery in an attempt to take the bone graft.

As a result of the incision, Mr. Sumner's peritoneum and small bowel lacerated, causing fecal material to escape from his bowel into his body cavity. This escape of fecal material resulted in contamination to Mr. Sumner's organs, and within twenty four hours, his condition had deteriorated to the point of "life threatening multisystem organ failure." Although Mr. Sumner was eventually discharged from Regional Medical Center on November 23, 2011, his condition remained of such a grave nature that he had to be fed through a feeding tube.

As a result of his injuries, Mr. Sumner soon initiated litigation on multiple fronts and against multiple defendants. Because the only claims at issue in this appeal are those asserted against Dr. Kutsikovich, we restrict our discussion accordingly. On July 5, 2012, counsel for Mr. Sumner mailed a letter to Dr. Kutsikovich giving him notice, pursuant to Tennessee Code Annotated section 29-26-121, that a medical malpractice claim would be filed against him. The letter noted that the claim arose out of "medical negligence and willful battery" committed by him and several Campbell Clinic, P.C. employees during the July 19, 2011 surgical procedure. Moreover, the letter was accompanied by a list of all other healthcare providers to whom written notice was being sent and stated that a HIPAA[2] compliant medical authorization was enclosed.

On August 3, 2012, counsel for Mr. Sumner mailed a letter to the Tennessee Division of Claims Administration giving notice of a claim pursuant to Tennessee Code Annotated

---

[1] The pertinent background facts concerning Mr. Sumner's treatment are derived from allegations in his amended complaint. They are assumed to be true at this stage in the proceedings.

[2] HIPAA is an acronym for the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936.

section 9-8-402. In that letter, counsel speculated that some of Mr. Sumner's treating doctors might be employees of the University of Tennessee, and for that reason, he wanted to give notice of a claim before the Claims Commission. The letter read as follows:

Dear Sirs:

I represent Mr. Timothy Todd Sumner in regard to severe personal injuries which he sustained arising out of medical negligence and willful battery for a surgical procedure performed on July 19, 2011 at the Regional Medical Center at Memphis. As a direct and proximate cause of the medical negligence and willful battery committed by the physicians performing the surgery on July 19, 2011, Mr. Sumner's peritoneum and small bowel were perforated as a result of which he quickly became septic resulting in multiple organ failure. Since the date of the surgery Mr. Sumner has repeatedly been in and out of hospitals in Memphis, Tennessee and Mississippi for various procedures and continues to suffer greatly and be totally disabled. The physicians who performed the surgery on July 19, 2011 were John C. Weinlein, M.D., Jan Paul Szatkowski, M.D., Tim Michael Bert, M.D., and Jeffery Kutsikovich, M.D.

On July 5, 2012, I mailed by certified mail, return receipt requested, the notices letters and all enclosures (which included HIPAA compliant medical authorizations and a list of the names and addresses of each health care provider to whom I sent notice pursuant to T.C.A. §29-26-121) to each of these physicians. The information and documentation which I had in my possession as of that time indicated to me that Drs. Szatkowski, Bert and Kutsikovich were employees of Campbell Clinic, P.C. at the time of the surgery performed on July 19, 2011. My July 5, 2012 letters were sent to Drs. Szatkowski, Bert and Kutsikovich at their offices at Campbell Clinic and the return receipts for these letters were signed and returned to me, which indicated to me that my information was correct. I am attaching a copy of the notice letters which I sent to each of these physicians on July 5, 2012, as well as copies of the return receipts for each physician.

I received information yesterday which may indicate that Drs. Szatkowski, Bert and Kutsikovich were employees of the University of Tennessee as of July 19, 2011 rather than Campbell Clinic. I do not presently know whether or not this is correct but, **out of an abundance of caution, I am now presenting notice of this claim to you**.

- 3 -

As indicated above, I believe that my client's claim involves causes of action against the responsible parties for both medical negligence and willful battery. I anticipate that I will be filing suit against the responsible parties in the Circuit Court in Memphis but, if it turns out that the negligence of Drs. Szatkowski, Bert and Kutsikovich are properly to be presented to the Claims Commission, **I hereby respectfully give notice of this claim**. If you have any questions concerning this matter, please call.

(emphasis added).

On October 16, 2012, Mr. Sumner filed a complaint in the Shelby County Circuit Court seeking to recover for damages sustained in the July 19, 2011 surgery. The complaint was filed against several doctors, including Dr. Kutsikovich, and Campbell Clinic, P.C. Within the complaint, Mr. Sumner asserted claims for "Health Care Liability," "Intentional Medical Battery," and "Punitive Damages."

Following the filing of the complaint in Circuit Court, counsel for Mr. Sumner mailed another letter to the Division of Claims Administration on November 2, 2012. This letter noted that a complaint had been filed in Circuit Court on Mr. Sumner's behalf and stated that a copy of the Circuit Court complaint was attached for the Division's review. Mr. Sumner's counsel indicated that he wanted to provide the Division with the "current status" of a claim against the State and noted that he was in the process of conducting discovery on several doctors' employment status.

Subsequent to the November 2 letter, additional correspondence ensued between the Division of Claims Administration and Mr. Sumner's counsel. Within this correspondence, Mr. Sumner's counsel expressed his desire to pursue his asserted claim against the State in light of his confirmation that some of Mr. Sumner's physicians, including Dr. Kutsikovich, were State employees. Indeed, in a letter dated January 2, 2013, Mr. Sumner's counsel stated as follows:

> I have been advised . . . that Drs. Bert and Kutsikovich were residents employed by the State of Tennessee a[t] the time of the incident from which this litigation arises.
>
>  . . . .
>
> **I am . . . advising you that I want to proceed with the claims of medical negligence against the State of Tennessee in this matter**.

As I believe you are aware, in the lawsuit I have filed in the Circuit Court in Memphis I have made allegations of negligence and intentional battery against all of the defendants. By pursuing the negligence claim against the State of Tennessee in respect to the negligence of Drs. Bert and Kutsikovich, I am not waiving my client's rights to pursue their claim against these doctors in the medical malpractice lawsuit in Memphis arising out of these doctors' intentional misconduct.

(emphasis added). We further observe that in a subsequent letter to the Division of Claims Administration, dated January 30, 2013, Mr. Sumner's counsel rejected any qualifier as to his intent to recover against the State. In pertinent part, he stated as follows: "I do not want there to be any uncertainty as to whether or not I am filing a claim against the State of Tennessee for medical negligence in this matter. **It is my position that I have already properly done so**." (emphasis added).

On April 5, 2013, Dr. Kutsikovich filed a motion to dismiss and/or for summary judgment in Circuit Court seeking to dismiss the entirety of the action asserted against him there. In a memorandum filed contemporaneously in support of the motion, Dr. Kutsikovich argued, *inter alia*, that: (1) he was statutorily immune pursuant to Tennessee Code Annotated section 9-8-307(h); (2) Mr. Sumner had waived any cause of action in Circuit Court by filing a claim against the State in the Claims Commission; (3) the Circuit Court lawsuit was barred by the doctrine of sovereign immunity; and (4) Mr. Sumner's medical battery claim was barred by the applicable statute of limitations. No immediate action was taken with respect to the motion.

On May 1, 2013, the Tennessee Claims Commission sent out a notice indicating that Mr. Sumner's claim had been transferred to it from the Division of Claims Administration. The record shows that the transfer was effectuated pursuant to the authority in Tennessee Code Annotated section 9-8-402(c). Under that statute, the Division of Claims Administration is responsible for investigating every claim and making "every effort to honor or deny each claim within ninety (90) days of receipt of the notice." Tenn. Code Ann. § 9-8-402 (2012). If the Division does not honor or deny the claim within the ninety-day settlement period, the statute states that it "shall automatically transfer the claim to the administrative clerk of the claims commission." *Id.* Following the transfer of his claim to the Claims Commission, Mr. Sumner took steps to disclaim his pursuit of relief against the State. On August 30, 2013, Mr. Sumner's counsel wrote a letter to the Claims Commission stating that "[a]ny reference to, or inference of, any negligence on [Dr. Kutsikovich's] part in the claim that was originally presented to the Claims Commission . . . is withdrawn." Within the letter, Mr. Sumner's counsel also stated that he was attaching an "Amendment to Complaint for Healthcare Liability" and a motion to transfer Mr. Sumner's claim to Circuit Court. In the

"Amendment to Complaint for Healthcare Liability" that was subsequently filed with the Claims Commission, Mr. Sumner attempted to clarify why he believed his case should be litigated solely in Circuit Court:

> Since this matter has been filed with the Tennessee Claims Commission, Plaintiff's attorney and defense counsel for the State of Tennessee have agreed to consolidate the [S]tate claim discovery with the discovery being taken in the Circuit Court action pending in Memphis.
>
>  . . . .
>
> The discovery thus far obtained in this matter has . . . revealed that Dr. Jeffrey Kutsikovich had very limited involvement in respect to both the time and scope of his activities involving the July 19, 2011 surgical procedure from which Plaintiff's cause of action arises but that his limited involvement was of such a nature as to cause devastating consequences. By this amendment, as well as the Amended Complaint which is being filed in the Circuit Court lawsuit in Memphis . . . Plaintiff makes known that he makes no allegations of negligence against Dr. Kutsikovich but, instead, Plaintiff's sole contention against Dr. Jeffrey Kutsikovich is that his improper actions were willful and/or intentional.
>
> Plaintiff understands that the State of Tennessee . . . will not be liable for the willful acts of Dr. Kutsikovich nor for the punitive damages being sought against him and the State of Tennessee Claims Commission is, therefore, without jurisdiction as to Plaintiff's sole cause of action against Dr. Kutsikovich for his willful and intentional misconduct giving rise to Plaintiff's injuries and damages. Plaintiff's attorney has made known to the Commissioner, as well as defense counsel for the State of Tennessee, that he is willing to enter into a consent order dismissing this claim for lack of jurisdiction but defense counsel for the State of Tennessee has refused to do so.

In February 2014, the Claims Commission entered an order dismissing Mr. Sumner's claim for lack of jurisdiction. Incident to its decision to dismiss his claim, the Claims Commission refused to make a ruling "on whether Dr. Kutsikovich was acting in the scope and course of his employment" with respect to his alleged misconduct. There is no indication that the order of the Claims Commission was ever appealed.

On May 5, 2014, Mr. Sumner filed an amended complaint in Circuit Court. As with the original complaint, the amended complaint contained a "Health Care Liability" count, an "Intentional Medical Battery" count, and a claim for punitive damages. With respect to Dr. Kutsikovich, however, the amended complaint stated that it did not make any allegations of negligence against him. Rather, it averred that "all actions taken by Dr. Kutsikovich were willful and intentional." In support of the denominated "Health Care Liability" count, the amended complaint stated that Dr. Kutsikovich had "willfully and intentionally" failed to act in accordance with the recognized standard of acceptable professional practice for physicians in the area. Concerning the "Intentional Medical Battery" count, the amended complaint averred that Mr. Sumner's treating doctors had "willfully and intentionally violated [his] instructions [regarding the bone graft]."

On November 14, 2014, following the filing of Mr. Sumner's amended complaint, Dr. Kutsikovich filed a supplemental memorandum in support of his motion to dismiss and/or for summary judgment. In addition to containing many of the same arguments that were set forth in Dr. Kutsikovich's April 5, 2013 memorandum of law, this memorandum contended that Mr. Sumner's "willful" and "intentional" health care liability claim was not cognizable under Tennessee law. A few months later, on January 20, 2015, Mr. Sumner filed a response opposing Dr. Kutsikovich's motion to dismiss and/or for summary judgment.

On January 30, 2015, the trial court held a hearing on Dr. Kutsikovich's motion to dismiss and/or for summary judgment. On April 30, 2015, it signed an order granting the motion. Although the order was filed on April 30, it was entered *nunc pro tunc* to March 4, 2015. Within its order, the trial court stated that it had considered Dr. Kutsikovich's motion under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. In pertinent part, the trial court was of the opinion that Mr. Sumner's amended complaint "ma[de] only intentional tort medical battery claims against Dr. Kutsikovich . . . based upon alleged intentional acts . . . preceding and during [the] surgery." Moreover, it held that Mr. Sumner's allegations concerning an "'intentional deviation from the standard of care'" were not recognized in Tennessee and should be dismissed as a matter of law. Regarding the pleaded medical battery claims, the trial court concluded that they were barred by the applicable statute of limitations. The trial court certified its order as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. The present appeal followed.

## Issues Presented

In his appellate brief, Mr. Sumner presents four issues for our review, restated verbatim as follows:

1. The trial court erred in ruling that Plaintiff does not have a health care liability claim against Dr. Jeffrey Kutsikovich;

2. The trial court erred in its ruling that Plaintiff makes only a medical battery claim against Dr. Kutsikovich in this matter;

3. The trial court erred in dismissing Plaintiff's claim for the intentional acts of Dr. Kutsikovich; and

4. The trial court erred in dismissing Plaintiff's claim for medical battery.

In Dr. Kutsikovich's appellate brief, additional issues are presented for this Court's consideration. Restated verbatim, these issues are as follows:

1. Whether the Court of Appeals may affirm dismissal of Plaintiff/Appellant's ("Plaintiff's") Claim on grounds, which were raised in the trial court, but are other than those on which the trial court granted dismissal?

2. Whether Plaintiff's Claim filed against the State of Tennessee ("State"), based upon the same acts or omissions as those alleged in Plaintiff's Circuit Court lawsuit against Dr. Kutsikovich irrevocably waived Plaintiff's causes of action against Dr. Kutsikovich, a State of Tennessee employee, pursuant to Tenn. Code Ann. § 9-8-307(b)?

3. Whether Plaintiff's claims against Dr. Kutsikovich are barred by sovereign immunity?

4. Whether Plaintiff's "intentional medical battery" claim, which is the only legally cognizable claim against Dr. Kutsikovich, is barred by the one-year statute of limitations pursuant to Tenn. Code Ann. §28-3-104(a)(1)?

**Discussion**

Although this appeal presents several matters for our review, we conclude that there is one dispositive issue that pretermits an analysis of the substantive rulings made by the trial court. Namely, we agree with Dr. Kutsikovich that the trial court lacked subject matter jurisdiction over the claims filed against him. As will be explained more fully below, Mr. Sumner's decision to assert a claim against the State pursuant to the Tennessee Claims Commission Act waived any other causes of action that he had against Dr. Kutsikovich based on the same acts or omissions. Although we rely on a different basis than the trial court in

concluding that the claims against Dr. Kutsikovich were properly dismissed, if a trial court reaches the correct result, "its judgment is entitled to affirmance irrespective of the reasons stated." *Clark v. Metro. Gov't of Nashville & Davidson Cnty.*, 827 S.W.2d 312, 317 (Tenn. Ct. App. 1991).

In his reply brief on appeal, Mr. Sumner argues that the question of his waiver under the Claims Commission Act is not a proper topic of consideration for this Court. In pertinent part, he argues that Dr. Kutsikovich waived the issue by asking the trial court not to rule on it. Although it is true that Dr. Kutsikovich ultimately requested the trial court to refrain from deciding the issue despite raising it in the trial court,[3] Mr. Sumner's arguments are to no avail. Subject matter jurisdiction cannot be waived "because it is the basis for the court's authority to act." *Meighan v. U.S. Sprint Commc'ns. Co.*, 924 S.W.2d 632, 639 (Tenn. 1996) (citation omitted). Indeed, "[t]he concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy." *Staats v. McKinnon*, 206 S.W.3d 532, 541-42 (Tenn. Ct. App. 2006) (citations omitted). Whether explicitly or by necessary implication, "[a] court derives its subject matter jurisdiction . . . from the Tennessee Constitution or from legislative acts." *Id.* (citations omitted).

In this case, Dr. Kutsikovich argues that the claims asserted against him in the trial court were waived due to Mr. Sumner's decision to file a claim against the State under the Tennessee Claims Commission Act. In response, Mr. Sumner contends that he never took an action sufficient to trigger the waiver provision relied upon by Dr. Kutsikovich. Having closely reviewed the record, we observe that the parties' disagreement is the result of a difference of opinion on a question of law. It is undisputed that Mr. Sumner engaged in correspondence with the Division of Claims Administration and that he made certain filings in the Claim Commission. What remains in dispute, however, is whether his actions properly triggered the statutory waiver that Dr. Kutsikovich prays this Court will find applicable.

When construing a statute, our goal is "to give full effect to the General Assembly's purpose, stopping just short of exceeding its intended scope." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010) (citations omitted). "The legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the statutory language, without a forced or subtle interpretation that would limit or extend the statute's application." *State v. Blackstock*, 19 S.W.3d 200, 210 (Tenn. 2000) (citation omitted). If the statutory language is clear and unambiguous, its plain meaning controls. *Seals v. H & F, Inc.*, 301 S.W.3d 237, 242 (Tenn. 2010) (citation omitted). "When a statute is ambiguous, however,

---

[3] Dr. Kutsikovich made this request, stating that he believed an appeal pending before the Tennessee Supreme Court would "directly address the issue" of when a claim is filed against the State. That appeal, *Moreno v. City of Clarksville*, No. M2013-01465-SC-R11-CV, 2015 WL 5526858, --- S.W.3d ----, (Tenn. Sept. 18, 2015), will be addressed *infra*.

we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning." *Id.* (citation omitted). To the extent that there are conflicting provisions in a statute that create an apparent ambiguity, the court's goal is to construe the statute "in a way that avoids conflict and facilitates the harmonious operation of the law." *Lee Med., Inc.*, 312 S.W.3d at 527 (citations omitted).

To reach a proper determination on the issue before us, we begin our analysis with an overview of the relevant statutes in question. In 1984, the General Assembly enacted a "comprehensive procedure for the filing, prosecution, and disposition of monetary claims against the State." *Mullins v. State*, 320 S.W.3d 273, 278-79 (Tenn. 2010). This procedure is codified at Tennessee Code Annotated section 9-8-301 *et seq.*, which is commonly known as the Tennessee Claims Commission Act ("the Act"). In connection with the enacted statutory scheme, "the Tennessee Claims Commission, consisting of one commissioner from each grand division of the State, was created to hear and determine claims against the State." *Id.* at 279 (citation omitted). The categories of claims for which the State may be liable under the Act are enumerated in Tennessee Code Annotated section 9-8-307(a). Included in the list of claims are claims for medical malpractice committed by a state employee. Under the current version of the statute, the term "medical malpractice" has been replaced with "health care liability." *See* Tenn. Code Ann. § 9-8-307(a)(1)(D)(Supp. 2015).

Although section 9-8-307(a) purports to give "exclusive jurisdiction" to the Claims Commission over the monetary claims enumerated thereunder, *see* Tenn. Code Ann. § 9-8-307(a), we have noted previously that the term "exclusive" is somewhat misleading considering the scope of the larger statutory scheme. *See Hunter v. State*, 1993 WL 133240, at *1 (Tenn. Ct. App. Apr. 28, 1993). Indeed, most plaintiffs seeking to pursue claims against the State cannot begin their efforts by seeking relief directly before the Claims Commission. Rather, the statutory scheme mandates that they must generally turn first to the Division of Claims Administration by filing a written notice of claim there. *See* Tenn. Code Ann. § 9-8-402(a)(1) ("The claimant must give written notice of the claimant's claim to the division of claims administration as a condition precedent to recovery, except claims for recovery of taxes shall be filed directly with the administrative clerk of the claims commission."). The Rules of the Claims Commission reinforce this statutory requirement. After noting that Rule 3 of the Tennessee Rules of Civil Procedure is not followed by the Commission, the Commission's Rules state as follows: "Claims before the Commission are commenced in the manner described in *T.C.A. §§9-8-301 et seq. and 401 et seq. especially 402*." Tenn. Comp. R. & Regs. 0310-01-01-.01(2) (italics in original). In further outlining the procedure, the Commission's Rules provide that all actions other than tax claims "are commenced by filing a written notice of claim (see *T.C.A. §9-8-402* for requirements) with the Division of Claims Administration." *Id.* (italics in original).

Once a claim is filed with the Division of Claims Administration, the Division has the authority to honor or deny it. Thereafter, a claimant may pursue his or her claim before the Claims Commission itself, whether by direct action or automatic transfer. In this regard, Tennessee Code Annotated section 9-8-402(c) provides as follows:

> The division of claims administration shall investigate every claim and shall make every effort to honor or deny each claim within ninety (90) days of receipt of the notice. If the claim is denied, the division shall so notify the claimant and inform the claimant of the reasons therefor and of the claimant's right to file a claim with the claims commission within ninety (90) days of the date of the denial notice. If the claim is honored and the damages may be ascertained within the ninety-day settlement period, the division shall so notify the claimant, and inform the claimant of the conditions of the settlement offer, and of the claimant's right to file such claimant's claim with the claims commission within ninety (90) days of the date of the settlement notice if the conditions of the settlement offer are unacceptable. If the claim is honored and the amount of damages may not be ascertained within the ninety-day settlement period because evidence of loss will be obtained after the ninetieth day of the settlement period, the division shall so notify the claimant and inform the claimant of the claimant's right to file a claim with the claims commission within ninety (90) days of the date the division forwards final compensation to the claimant or upon written request for transfer to the commission by that claimant; provided, that final compensation shall be forwarded to the claimant within one (1) year of the date of the settlement notice. If the division fails to honor or deny the claim within the ninety-day settlement period, the division shall automatically transfer the claim to the administrative clerk of the claims commission.

Tenn. Code Ann. § 9-8-402(c).

Although the Act operates as a waiver of the State's sovereign immunity and provides claimants with a "deep pocket" that they would not otherwise be able to pursue, it also "imposes a strict election of remedies requirement." *Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 524 (Tenn. 2006). Indeed, pursuant to Tennessee Code Annotated section 9-8-307(b), "[c]laims against the state filed pursuant to subsection (a) shall operate as a waiver of any cause of action, based on the same act or omission, which the claimant has against any state officer or employee." Tenn. Code Ann. § 9-8-307(b). The waiver is only void "if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment." *Id.* Although there is a dispute between the parties as to what triggers the waiver under this statutory section, we are of the opinion that in non-tax

cases such as this, the waiver is activated by the filing of the notice of claim in the Division of Claims Administration.  Under the terms of the waiver provision, a waiver is stated to occur when there are "[c]laims against the state filed pursuant to subsection (a)."  *Id.* § 9-8-307(b).  We note that the referenced "subsection (a)" is the statutory provision containing the list of claims for which the State has waived immunity, over which the Commission is stated to have "exclusive" jurisdiction.  *See id.* § 9-8-307(a).  We further note that to pursue recovery on any of these claims, save those for the recovery of taxes, a claimant must first file a notice of claim in the Division of Claims Administration.  *Id.* § 9-8-402(a).  Indeed, the Rules of the Claims Commission specifically provide that all "[non-tax] [c]laims before the Commission" "are commenced by filing a written notice of claim . . . with the Division of Claims Administration."  Tenn. Comp. R. & Regs. 0310-01-01-.01(2).  Considering the statutory scheme as a whole, we are compelled to conclude that the filing of a notice of claim in the Division of Claims Administration constitutes a "[c]laim[] against the state filed pursuant to subsection (a)."  Tenn. Code Ann. § 9-8-307(b).

We fail to see how a waiver is triggered at any other point in the claims process for non-tax claims.  As we have previously noted, because the Claims Commission Act provides claimants with a cause of action against the State, a "deep pocket" that they would not otherwise be able to pursue, "it imposes a strict election of remedies requirement."  *Haley*, 188 S.W.3d at 524.  Under the statutory scheme, a claimant elects to pursue relief against the State when he or she files a notice of claim with the Division of Claims Administration.  Indeed, once the notice of claim is filed, the Division of Claims Administration has the authority to honor it.  *See* Tenn. Code Ann. § 9-8-402(c).

Although the waiver provision has been previously discussed on a number of occasions, as far as our research has revealed, no Tennessee court has specifically discussed whether the filing of the notice of claim is what triggers the waiver in non-tax cases.[4]  We do observe, however, that the issue has been addressed in a couple of unpublished opinions by the United States Court of Appeals for the Sixth Circuit.  *See Stamps v. Matthews*, 142 F.3d 436, 1998 WL 57482 (6th Cir. Feb. 3, 1998) (unpublished table decision); *Estate of Drew v. U.T. Reg'l Med. Ctr. Hosp.*, 121 F.3d 707, 1997 WL 441752 (6th Cir. Aug. 5, 1997)

---

[4] In this vein, we are of the opinion that our interpretation is not contradicted by the Tennessee Supreme Court's prior statement that "[t]he moment the plaintiff's claim is 'filed' with the Claims Commission, the plaintiff has waived all other causes of action[.]"  *Haley*, 188 S.W.3d at 524.  In *Haley*, the Supreme Court was not specifically considering whether the filing of a notice of claim in the Division of Claims Administration activated the waiver.  In any event, as we have already explained, in non-tax cases, a claimant pursues recovery against the State before the Commission by filing a notice of claim in the Division of Claims Administration.  In pertinent part, the Rules of the Commission specifically provide as follows: "Claims before the Commission are commenced" "by filing a written notice of claim . . . with the Division of Claims Administration."  Tenn. Comp. R. & Regs. 0310-01-01-.01(2).

(unpublished table decision). Although certainly not binding on this Court, *see Townes v. Sunbeam Oster Co.*, *Inc.*, 50 S.W.3d 446, 452 (Tenn. Ct. App. 2001) ("When a federal court undertakes to decide a state law question in the absence of authoritative state precedent, the state courts are not bound to follow the federal court's decision."), we note that the Sixth Circuit's analysis has led it to reach the same conclusion that we have herein. In pertinent part, the Sixth Circuit reasoned as follows in its *Estate of Drew* decision:

> Under both Tennessee and federal law, parties bringing claims against the state are "presumed to know the law and the rules of the commission." *Tuck v. State*, No. 03A01-9510-BC-00355, 1996 WL 310012, at \*3 (Tenn. Ct. App. June 11, 1996); *Leaman*, 825 F.2d at 956. According to the Rules of the Tennessee Claims Commission, "All other actions [besides tax claims] are commenced by filing written notice of a claim (see T.C.A. § 9-8-402 for requirements) with the Division of Claims Administration." Rule 0310-1-1-.01(2)(b). On their face, then, the rules of the Commission state that a claim is commenced at the time of the filing with the Division. Although the courts have not specifically held that filing with the Division of Claims Administration constitutes filing for the purposes of the Claims Commission Act and thus waiving other claims, they have consistently appeared to treat Division of Claims Administration filings as such. *See e.g.*, *Hiefner v. University of Tenn.,* 914 F.Supp. 1513, 1516 (E.D. Tenn. 1995); *Mirabella v. University of Tenn.*, 915 F.Supp. 9:25, 926-27 (E.D. Tenn. 1994); *Worley v. State,* No. 02A01-9312-BC-00267, 1995 WL 702792, at \*2 (Tenn. Ct. App. Nov. 28, 1995); *Hunter v. State*, No. 104743, 1993 WL 133240, at \* 1-2 (Tenn. Ct. App. Apr. 28, 1993).
>
> . . . .
>
> Also supporting the conclusion that filing a written notice with the Division constitutes a filing with the Commission, the Claims Commission act itself states that "[t]he filing of the notice [with the Division of Claims Administration] by the claimant tolls all statutes of limitation as to other persons potentially liable to the claimant due to the occurrence from which the claim before the commission arises." Tenn.Code. Ann. § 9-8-402(b). It is highly unlikely that the statute of limitations would be tolled but that, without any mention in the statute whatsoever, a different date for the effectiveness of the waiver would apply. Additionally, the provision for transfer in § 9-8-402(c) provides that the Division of Claims Administration must "investigate every *claim* and shall make every effort to honor or deny each *claim* within ninety (90) days of receipt of notice...." (Emphasis added.) This subsection further provides that "[i]f the division fails to honor or deny the *claim* within

- 13 -

the ninety-day settlement period, the division shall automatically transfer the *claim* to the claims commission." *Id.* (emphasis added).

*Estate of Drew*, 1997 WL 441752, at *4.

In support of his position that he did not waive his right to pursue claims against Dr. Kutsikovich in Circuit Court, Mr. Sumner largely relies on two cases. Having reviewed these cases, however, we conclude that they create no conflict with our analysis herein, as both are distinguishable on their facts. The first case relied on by Mr. Sumner is *Moreno v. City of Clarksville*, No. M2013-01465-SC-R11-CV, 2015 WL 5526858, --- S.W.3d ----, (Tenn. Sept. 18, 2015). As previously noted, *Moreno* was pending at the time that the trial court ruled on Dr. Kutsikovich's motion to dismiss and/or for summary judgment. Because Dr. Kutsikovich believed that *Moreno* would provide guidance on the question of waiver under Tennessee Code Annotated section 9-8-307(b), he requested the trial court hold any ruling on the issue in abeyance.

Although *Moreno* did generally examine the procedure for filing claims in the Claims Commission, it is inapposite to our discussion herein. In *Moreno*, the Supreme Court did not consider the issue of statutory waiver under section 9-8-307. Rather, it primarily considered whether the notice of claim filed in the Division of Claims Administration is sufficient to satisfy the "original complaint" requirement in Tennessee Code Annotated section 20-1-119.[5]

---

[5] This statute provides for a "grace period" in suing defendants even where the statute of limitations has otherwise elapsed. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 370 (Tenn. 2012). In relevant part, it states as follows:

(a) In civil actions where comparative fault is or becomes an issue, if a defendant named in an original complaint initiating a suit filed within the applicable statute of limitations, or named in an amended complaint filed within the applicable statute of limitations, alleges in an answer or amended answer to the original or amended complaint that a person not a party to the suit caused or contributed to the injury or damage for which the plaintiff seeks recovery, and if the plaintiff's cause or causes of action against that person would be barred by any applicable statute of limitations but for the operation of this section, the plaintiff may, within ninety (90) days of the filing of the first answer or first amended answer alleging that person's fault, either:

(1) Amend the complaint to add the person as a defendant pursuant to Tenn. R. Civ. P. 15 and cause process to be issued for that person; or

(2) Institute a separate action against that person by filing a summons and complaint. If the plaintiff elects to proceed under this section by filing a separate action, the complaint so filed shall not be considered an original complaint initiating the suit or an amended complaint for purposes of this subsection (a).

- 14 -

*See id.* at \*6-10. In the course of its analysis, the Supreme Court noted that once non-tax claims leave the Division of Claims Administration and are transferred to the Claims Commission, the notice of claim alone is not sufficient to adjudicate the claim. *Id.* at \*8. The Supreme Court explained that under the Rules of the Claims Commission "the claimant must also file a complaint that complies with Rules 8 and 10 of the Tennessee Rules of Civil Procedure." *Id.* There is no denying this fact; once a claim has been assigned to a Commissioner, the claimant must file a complaint compliant with Rules 8 and 10 in the Claims Commission if such a complaint has not already been filed with the Division of Claims Administration. *See* Tenn. Comp. R. & Regs. 0310-01-01-.01(2)(d)(3). Although the filing of a formal complaint may ultimately be required to adjudicate a claim if the claim has not been resolved in the Division of Claims Administration, that does not negate the waiver that is triggered upon the filing of a notice of claim under Tennessee Code Annotated section 9-8-402. As previously addressed, it is the filing of a notice of a claim that evidences a claimant's intent to recover damages against the State.

Although Mr. Sumner cites to *Moreno* to support his position that waiver never occurred, he relies most heavily on an unpublished opinion from this Court, *Haley v. State*, No. E2012-02484-COA-R3-CV, 2013 WL 5431998 (Tenn. Ct. App. Sept. 25, 2015). According to Mr. Sumner, under *Haley v. State*, a claim cannot be considered to have been commenced in the Tennessee Claims Commission until a formal complaint is filed after the transfer of the claim to the Commission. Having reviewed *Haley v. State*, we are of the opinion that it does not support his position. At the outset, we note that *Haley v. State* did not address the waiver provision that is in dispute between Mr. Sumner and Dr. Kutsikovich. Instead, we were tasked in that case with reconciling the pre-suit notice requirements in Tennessee Code Annotated section 29-26-121(a) and the requirements imposed by Tennessee Code Annotated section 9-8-402. On appeal, this Court ultimately held that there was "no conflict with a plaintiff providing notice in accordance with Tennessee Code Annotated section 29-26-121 simultaneously to the notice pursuant to Tennessee Code Annotated section 9-8-402." *Id.* at \*9. In the process of setting out the background facts of the case, we quoted certain language from the Claims Commissioner's order from which the appeal had arisen. In reproducing the order, we emphasized some of the language in italics, seemingly suggesting that we approved of some of the conclusions that the Claims Commissioner had reached. In pertinent part, the italicized portion stated as follows:

---

(b) A cause of action brought within (90) days pursuant to subsection (a) shall not be barred by any statute of limitations. This section shall not extend any applicable statute of repose, nor shall this section permit the plaintiff to maintain an action against a person when such an action is barred by an applicable statute of repose.

Tenn. Code Ann. § 20-1-119.

- 15 -

> *The State appears to argue that a "complaint" is not the starting point in a claim filed with the Commission. That is clearly not the case. Later language found in the Rule makes it clear that in a situation such as found in this case, a Complaint compliant with Tenn. R. Civ. P. Rules 8 and 10, must be filed after a claim is transferred to the Commission from the DCA where it was unable to be resolved. Prior to that there is no claim before the Commission.*

*Id.* at *6 (reproducing portions of the Claims Commissioner's order).

Mr. Sumner relies on this language in support of his argument that no waiver was effectuated under Tennessee Code Annotated section 9-8-307(b). Although he acknowledges that he engaged in correspondence with the Division of Claims Administration and admits that he filed the "Amendment to Complaint for Healthcare Liability," he stresses that he never filed a formal complaint against the State in the Claims Commission. Indeed, concerning his filed "Amendment to Complaint for Healthcare Liability," he argues that the document "clearly expressed . . . his desire to withdraw th[e] matter from the Claims Commission docket." Because under *Haley v. State* there is purportedly "*no claim before the Commission*" until a complaint compliant with Rules 8 and 10 of the Tennessee Rules of Civil Procedure is filed and asserted against the State, Mr. Sumner maintains that there is no basis for a waiver.

We disagree. The Rules of the Commission require the filing of a formal complaint in order for a final adjudication to occur once the claim has been transferred to the Claims Commission, but the claim itself reaches the jurisdiction of the Commission without such action. For example, we observe that under Tennessee Code Annotated section 9-8-402(c), the Division of Claims Administration "shall automatically transfer the *claim* to the administrative clerk of the claims commission" if the Division fails to honor or deny the filed claim within the ninety-day settlement period. Tenn. Code Ann. § 9-8-402 (emphasis added). Moreover, section 9-8-402(c) provides that claimants may file directly with the Claims Commission regarding *claims* that the Division has honored or denied. *See id.* We observe that there is no requirement that a formal complaint accompany such a filing. The formal complaint contemplated by Tenn. Comp. R. & Regs. 0310-01-01-01(2)(d)(3) is only required after the claim has reached the Claims Commission.

In any event, it is not the litigation of a claim in the Commission itself that is the trigger for waiver in non-tax cases. As we construe the statute, the initial filing of a notice of claim in the Division of the Claims Administration is what deprives a claimant of any other causes of action based on the same acts or omissions. Accordingly, we conclude that Mr. Sumner's emphasis on the necessity of a formal complaint is misplaced. Although there is no question that a formal complaint must be filed in the Claims Commission if that entity is to

ultimately adjudicate a claim to finality, the recognition of this proposition does not in any way affect the waiver that is triggered under Tennessee Code Annotated section 9-8-307(b). As we have emphasized, the Rules of the Claims Commission specifically provide that "[c]laims *before the Commission* are commenced in the manner described [in Tennessee Code Annotated section 9-8-402]." Tenn. Comp. R. & Regs. 0310-01-01-.01(2) (emphasis added). In specifying what is required under section 9-8-402 for non-tax claims, the Rules then go on to state that all actions are commenced by filing a written notice of claim with the Division of Claims Administration. *Id.* The notice of claim activates the waiver because at that point in time, a "[c]laim[] against the state" has been asserted. *See* Tenn. Code Ann. § 9-8-307(b). Indeed, once the notice of claim is filed, the State is subjected to a statutory process under which it may potentially be held liable. Absent that statutory process, it would retain its sovereign immunity. *See Stamps*, 1998 WL 57482, at *1 ("Stamps made a claim against Tennessee under the authority of the only statute creating jurisdiction for any monetary claims against the state, and that statute specifically provides that making such a claim constitutes a waiver of any cause of action based on the same act or omission.").

Under Mr. Sumner's proposed interpretation of the statute, a claimant could theoretically recover damages against the State but nonetheless pursue additional relief against State officers or employees in a state or federal court based on the same acts or omissions. A claimant could, for example, accept a settlement for a claim that the Division of Claims Administration decided to honor, thereby removing the need for an "appeal" to the Claims Commission and the filing of a formal complaint. Accepting Mr. Sumner's interpretation of the waiver provision as controlling, this claimant would not be barred from pursuing relief against State employees in other forums based on the same acts or omissions because a complaint would never be filed in the Claims Commission. This is contrary to the design of the waiver provision. *See Lattimer v. Tenn. Dep't of Corr.*, No. M2000-03126-COA-R3-CV, 2002 WL 598558, at *4 (Tenn. Ct. App. Apr. 17, 2002) ("[T]he waiver provision . . . is designed to prevent a plaintiff from receiving duplicative or inconsistent judgments in different tribunals for the same injury.").

Given our construction of the waiver statute, we conclude that it is of no consequence that the formal complaint Mr. Sumner filed in the Claims Commission disclaimed any relief against the State. What remains significant is that he filed a notice of claim seeking relief against the State under Tennessee Code Annotated section 9-8-402. In a non-tax case such as this, that is the action that triggers the waiver under Tennessee Code Annotated section 9-8-307(b).

The information required in a notice of claim is outlined in Tennessee Code Annotated section 9-8-402(a)(2). According to the statute, the following information is required:

The notice shall state the circumstances upon which the claim is based, including, but not limited to: the state department, board, institution, agency, commission or other state entity that allegedly caused the injury; the time and place of the incident from which the claim arises; and the nature of the claimant's injury.

Tenn. Code Ann. § 9-8-402(a)(2). In Mr. Sumner's original correspondence with the Division of Claims Administration on August 3, 2012, he provided, by way of counsel, the following pertinent information regarding his alleged injuries: (1) he alleged that he had been injured due to the medical negligence of several physicians, including Dr. Kutsikovich, during a surgical procedure performed on July 19, 2011; (2) he alleged that the physicians' actions had proximately caused his peritoneum and small bowel to perforate; (3) he alleged that this perforation had caused him to become septic, resulting in multiple organ failure; (4) he alleged that since the surgery, he had received various medical treatments but still suffered greatly; and (5) he alleged that the surgery causing his injuries had been performed at the Regional Medical Center in Memphis. Although the August 3 letter speculated as to whether Dr. Kutsikovich and other physicians were actually employees of the University of Tennessee, it was presented as a "Notice of Claim Pursuant to Tennessee Code Annotated Sections 29-26-121 and 9-8-402." Indeed, as we have already noted, Mr. Sumner's counsel declared within the letter that he was, "out of an abundance of caution . . . presenting notice of this claim to you". Moreover, in concluding the letter, Mr. Sumner's counsel stated as follows: "I anticipate that I will be filing suit against the responsible parties in the Circuit Court in Memphis but, if it turns out that the negligence of Drs. Szatkowski, Bert and Kutsikovich are properly to be presented to the Claims Commission, I hereby respectfully give notice of this claim."

After he confirmed that Dr. Kutsikovich was, in fact, a State employee, Mr. Sumner's counsel sent subsequent letters to the Division of Claims Administration expressing his intention to proceed with the claims of negligence that he had asserted. As previously noted, in a letter dated January 2, 2013, Mr. Sumner's counsel stated as follows:

I have been advised . . . that Drs. Bert and Kutsikovich were residents employed by the State of Tennessee as the time of the incident from which this litigation arises.

 . . . .

I am . . . advising you that I want to proceed with the claims of medical negligence against the State of Tennessee in this matter.

- 18 -

As I believe you are aware, in the lawsuit I have filed in the Circuit Court in Memphis I have made allegations of negligence and intentional battery against all of the defendants.

Moreover, in another letter dated January 30, 2013, Mr. Sumner's counsel stated as follows: "I do not want there to be any uncertainty as to whether or not I am filing a claim against the State of Tennessee for medical negligence in this matter. It is my position that I have already properly done so."

Because we conclude that Mr. Sumner's decision to pursue relief against the State waived any causes of action he had against Dr. Kutsikovich individually based on the same acts or omissions, the trial court was without subject matter jurisdiction to entertain the claims that Mr. Sumner asserted against him. Indeed, Mr. Sumner's claim asserted against the State under the Act and the claims asserted against Dr. Kutsikovich in the present case are all based on Dr. Kutsikovich's treatment of Mr. Sumner in connection with the July 19, 2011 surgical procedure. In reaching our determination regarding waiver, we note that Mr. Sumner's January 2, 2013 letter purported to preserve Mr. Sumner's rights to pursue claims of intentional conduct against Dr. Kutsikovich in another forum. As we interpret the waiver provision, this attempt to avoid the effect of Tennessee Code Annotated section 9-8-307(b) was to no avail. Once the waiver is triggered, the claimant waives "any cause of action, based on the same act or omission, which the claimant has against any state officer or employee." *Id.* § 9-8-307(b). Mr. Sumner is presumed "to know the law and the rules of the commission[.]" *Tuck v. State*, No. 03A01-9510-BC-00355, 1996 WL 310012, at *3 (Tenn. Ct. App. June 11, 1996). Having made the choice to seek recovery on a claim for which the State had waived immunity, Mr. Sumner elected to waive other avenues of recovery against Dr. Kutsikovich "based on the same act or omission." *See* Tenn. Code Ann. § 9-8-307(b).

Under the waiver provision, the waiver is void "if the commission determines that the act or omission was not within the scope of the officer's or employee's office or employment." *Id.* § 9-8-307(b). In this case, no such determination was made. In its order dismissing Mr. Sumner's claim from the Commission, the Claims Commission stated that this issue should be raised in Mr. Sumner's Circuit Court case. There is no indication from the record that the order of the Claims Commission was ever appealed.[6] There being no determination that Dr. Kutsikovich's alleged acts or omissions were outside the scope of his office or employment, Mr. Sumner's waiver remains operative.

---

[6] In fact, the parties' briefs appear to concede that no appeal was ever filed. Whereas Dr. Kutsikovich's brief directly states that no appeal was sought from the Commission's order, Mr. Sumner's reply brief accuses Dr. Kutsikovich of trying to "back door" an appeal in the present appeal over certain aspects of the Commission's ruling.

- 19 -

## Conclusion

In light of our determination that the trial court lacked subject matter jurisdiction over Mr. Sumner's claims against Dr. Kutsikovich, we hereby affirm its dismissal of Dr. Kutsikovich as a Defendant in this case, albeit on a different basis.  The remaining issues are pretermitted in light of our holding.  The costs of this appeal are assessed against the Plaintiff/Appellant, Timothy Sumner, and his surety, for which execution may issue if necessary.  This matter is remanded to the trial court for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and are consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE